UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COZY, INC.,                                    )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )          CIVIL ACTION NO. 21-10134-JGD
                                               )
DOREL JUVENILE GROUP, INC.,                    )
                                               )
                    Defendant.                 )


## MEMORANDUM OF DECISION AND ORDER ON DOREL'S MOTION FOR SUMMARY DETERMINATION OF PRIORITY DATES

June 22, 2023

DEIN, U.S.M.J.

### I. INTRODUCTION

Cozy, Inc. ("Cozy") is a company owned by Dr. Arjuna Rajasingham, the holder of numerous patents relating to safety systems designed to protect occupants of vehicles in the event of a collision. The defendant, Dorel Juvenile Group, Inc. ("Dorel"), is a manufacturer of juvenile products, including child seats for use in vehicles. Since early 2009, Dorel's child seats have incorporated its "Air Protect® technology." By this action, Cozy contends that Dorel's Air Protect® technology infringes on four of its patents, including U.S. Patent Nos. 9,902,298 (the "'298 Patent"), 9,669,739 (the "'739 Patent"), 7,156,416 (the "'416 Patent") and 8,136,835 (the "'835 Patent"). Dorel denies infringement and contends that the asserted patents are invalid and otherwise unenforceable. Additionally, Dorel has brought counterclaims, which Cozy strenuously denies, by which Dorel alleges that Cozy engaged in inequitable conduct in

connection with its prosecution of the Patents before the United States Patent and Trademark Office ("PTO").

The matter is before the court on "Dorel Juvenile Group, Inc.'s Motion for Summary Determination of Priority Dates for Asserted Patents" (Docket No. 176), by which Dorel is seeking a determination, pursuant to Fed. R. Civ. P. 56(a), of the priority dates of the four patents asserted against it in this case (the "Asserted Patents").  Specifically, Dorel is seeking a determination that the '298 and '739 Patents are only entitled to priority to their application filing dates of January 20, 2015 and September 9, 2015, respectively, due to a break in the chain of patents claiming priority.  It is also seeking a ruling that as a matter of law, both the '416 and '835 Patents claim priority to September 24, 1997, based on Dr. Rajasingham's original claim of priority.  Cozy argues that each of the Asserted Patents is entitled to a priority date of November 8, 1999, based on later filings by Dr. Rajasingham, and that the presence of disputed facts warrants the denial of Dorel's motion.  For all the reasons detailed below, this court finds that the relevant facts are not in dispute and that Dorel is entitled to judgment as a matter of law.  Accordingly, Dorel's motion for summary determination of priority dates is ALLOWED.[1]

---

[1] Dorel has filed a separate Motion to Strike (Docket No. 286) the Declarations of Cozy's experts, John R. Thomas and Richard Kent, Ph.D., which were filed by Cozy in connection with its opposition to Dorel's motion for summary determination.  Therein, Dorel argues that both Declarations should be stricken, pursuant to Rule 702 of the Federal Rules of Evidence, because they are unreliable and irrelevant to the issues raised in its motion for summary determination.  In particular, Dorel contends that Professor Thomas' Declaration should be stricken because it contains improper and unsupported legal conclusions regarding the priority dates of the Asserted Patents and ignores critical issues raised by Dorel in its motion for summary determination.  It also contends that Professor Thomas lacks the expertise necessary to opine on technical matters relating to priority.  With respect to Dr. Kent, Dorel argues that his Declaration should be stricken as unreliable because it attempts to create a factual dispute where none exists by "straining to find related terms or figures to the point of absurdity" between two of the Asserted Patents and a patent in their chain of priority.  (Docket No. 287 at p. 12 of 14).  Dorel's Motion to Strike is ALLOWED IN PART and DENIED IN PART.  Under Rule 702 of the Federal Rules of Evidence, a

## II. <u>STANDARD OF REVIEW</u>

### A.  <u>Standard of Review Under Fed. R. Civ. P. 56(a)</u>

Dorel has brought its motion pursuant to Rule 56(a) of the Federal Rules of Civil

Procedure, which governs motions for summary judgment.  <u>See</u> Fed. R. Civ. P. 56(a).  Under

Rule 56(a), summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  <u>Id.</u>

"A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in

the favor of the non-moving party[.]'"  <u>Taite v. Bridgewater State Univ., Bd. of Trs.</u>, 999 F.3d 86,

93 (1st Cir. 2021) (quoting <u>Ellis v. Fid. Mgmt. Tr. Co.</u>, 883 F.3d 1, 7 (1st Cir. 2018)).  "[A] fact is

'material' if it 'has the potential of affecting the outcome of the case[.]'"  <u>Id.</u> (quoting <u>Pérez-</u>

<u>Cordero v. Wal-Mart P.R., Inc.</u>, 656 F.3d 19, 25 (1st Cir. 2011)).

When a properly supported motion for summary judgment is presented, the non-

moving party can avoid summary judgment only by providing properly supported evidence of a

genuine dispute about material facts.  <u>See</u> <u>Theriault v. Genesis HealthCare LLC</u>, 890 F.3d 342,

348 (1st Cir. 2018).  Accordingly, "the nonmoving party must ... 'set forth specific facts showing

---

qualified expert "may testify in the form of an opinion or otherwise if: (a) the expert's ... specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  These requirements impose a duty upon the trial judge "of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  <u>Daubert v. Merrell</u> <u>Dow Pharms., Inc.</u>, 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993).  For the reasons described below, this court finds that Dr. Kent's testimony is unreliable and inconsistent with this court's rulings on claim construction.  Accordingly, Dorel's motion to strike his Declaration is allowed.  With respect to Professor Thomas, this court finds that Appendix 4 of his Declaration lacks a reliable foundation, but that his testimony is otherwise admissible.  Accordingly, Dorel's motion to strike his Declaration is allowed with respect to Appendix 4 but otherwise denied.

[3]

that there is a genuine issue for trial[.]'" <u>Carrozza v. CVS Pharmacy, Inc.</u>, 992 F.3d 44, 56-57 (1st

Cir. 2021) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91

L. Ed. 2d 202 (1986)).  In evaluating a motion for summary judgment, the Court must review the

record "in a light most favorable to the non-moving party[.]"  <u>Lima v. City of E. Providence</u>, 17

F.4th 202, 206 (1st Cir. 2021).  Rule 56 "mandates the entry of summary judgment . . . against a

party who fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial."  <u>Popular</u>

<u>Auto, Inc. v. Reyes-Colon (In re Reyes-Colon)</u>, 922 F.3d 13, 20 (1st Cir. 2019) (quoting <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).  In the instant

case, Dorel has shown that it is entitled to the entry of summary judgment with respect to the

priority dates for each of the Asserted Patents.

### B.  Patent Priority -- In General

"A patent's effective filing date, the 'priority date,' is usually the date on which the

patent application is filed with the [PTO], unless the patentee claims the benefit of an earlier-

filed application."  <u>Worlds, Inc. v. Activision Blizzard, Inc.</u>, Civil Action No. 12-10576-DJC, 2014

WL 972135, at *4 (D. Mass. Mar. 13, 2014).  In the instant case, Cozy is claiming the benefit of

earlier-filed applications with respect to each of the Asserted Patents.  With respect to the '298

and '739 Patents, the parties dispute whether Dr. Rajasingham properly claimed priority back to

1999, or whether a defect in the claimed priority chain limits the priority dates of those Patents

to their application filing dates.  With respect to the '416 and '835 Patents, it is undisputed that

Dr. Rajasingham initially attempted to claim priority back to September 24, 1997.  At issue is

[4]

whether his later efforts to amend his priority claims for those Patents properly limited their

priority dates to November 8, 1999.

There is no requirement that a patentee claim priority to an earlier patent.  See Nat.

Alts. Int'l, Inc. v. Iancu, 904 F.3d 1375, 1383 (Fed. Cir. 2018) (noting that patent applicants may

"disclaim the benefit of earlier filing dates.").  However, "[w]hen inventors file patent

applications, they may, at their option, claim priority to a previous patent in the same patent

family."  (Thomas Decl. ¶ 19).[2]  "[F]or a patent's claims to be entitled to an earlier priority date,

the patentee must *demonstrate* that the claims meet the requirements of 35 U.S.C. § 120."

Nat. Alts. Int'l, Inc., 904 F.3d at 1380 (emphasis in original) (quoting In re NTP, Inc., 654 F.3d

1268, 1276 (Fed. Cir. 2011)).  That statute provides in relevant part as follows:

> An application for patent for an invention disclosed in the manner provided in
> section 112(a) ... in an application previously filed in the United States, ... which
> names an inventor or joint inventor in the previously filed application shall have
> the same effect, as to such invention, as though filed on the date of the prior
> application, if filed before the patenting or abandonment of or termination of
> proceedings on the first application or on an application similarly entitled to the
> benefit of the filing date of the first application and if it contains or is amended to
> contain a specific reference to the earlier filed application....

35 U.S.C. § 120.  Accordingly, a patentee claiming priority to an earlier application must

establish that (1) the invention described in the new application was disclosed in accordance

with 35 U.S.C. § 112(a) "in an application previously filed in the United States[,]" (2) the new

---

[2] "Thomas Decl." refers to the Declaration of John R. Thomas in Support of Plaintiff Cozy, Inc.'s
Opposition to Dorel Juvenile Group, Inc.'s Motion for Summary Determination of Priority Dates for
Asserted Patents (Docket No. 245).

application was filed by one or more inventors named "in the previously filed application[,]" (3)

the new application is co-pending with the earlier application, or "filed before the patenting or

abandonment of or termination of proceedings on the first application[,]" and (4) the new

application contains or is "amended to contain a specific reference to the earlier filed

application."  Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc., 609 F.3d 1345, 1349-50

(Fed. Cir. 2010) (quoting 35 U.S.C. § 120).  "Entitlement to priority under § 120 is a legal

determination based on underlying fact findings."  Nat. Alts. Int'l, Inc., 904 F.3d at 1379.

"When the underlying facts are undisputed, priority date determination is purely a legal

question."  Id.

        An issue in the present case is whether the '298 and '739 Patents comply with the

disclosure requirement of Section 120.  To satisfy this requirement and "gain the benefit of the

filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading

back to the earlier application must comply with the written description requirement of 35

U.S.C. § 112."[3]  Hollmer v. Harari, 681 F.3d 1351, 1355 (Fed. Cir. 2012) (quoting Zenon Env't,

Inc. v. U.S. Filter Corp., 506 F.3d 1370, 1378 (Fed. Cir. 2007)) (additional citation omitted).  In

other words, "continuity of disclosure must have been maintained throughout [the] chain of

patents" from the earliest patent to which the patentee is claiming priority up to the present

claims.  See Zenon Env't, 506 F.3d at 1378 ("in order for the '319 patent to be entitled to

---

[3] Section 112 provides in relevant part that "[t]he specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."  35 U.S.C. § 112(a).

priority from the '373 patent, continuity of disclosure must have been maintained throughout a chain of patents from the '373 patent leading up to the '319 patent."). "Thus, if any application in the priority chain fails to make the requisite disclosure of subject matter, the later-filed application is not entitled to the benefit of the filing date of applications preceding the break in the priority chain." Hollmer, 681 F.3d at 1355. "Section 120 places the burden on the patent owner to provide a clear, unbroken chain of priority." Droplets, Inc. v. E*TRADE Bank, 887 F.3d 1309, 1317 (Fed. Cir. 2018). "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1307 (Fed. Cir. 2008). Thus, where the material facts are undisputed, the question "[w]hether the intervening patents in a chain of priority maintain the requisite continuity of disclosure is a question of law[.]" Hollmer, 681 F.3d at 1355.

In evaluating whether a patentee is entitled to priority, courts remain mindful of the purpose and policy considerations underlying 35 U.S.C. § 120. The purpose of the statute "is to provide clear notice to the public of the patentee's claimed priority date." Droplets, 887 F.3d at 1320. The underlying policy is to make it relatively easy for members of the public to determine a patent's priority date. Thus, as another session of this court stated when discussing the "specific reference" requirement[4] of § 120:

> A patent grants the powerful "right to exclude others from making, using, offering for sale, or selling the invention throughout the United States." *Edwards Lifesciences AG v. CoreValue, Inc.*, 699 F.3d 1305, 1314 (Fed. Cir. 2012) (quoting

---

[4] The "specific reference" requirement refers to the requirement that an applicant for a patent claiming priority to an earlier application include in the new application "a specific reference to the earlier filed application." Encyclopaedia Britannica, 609 F.3d at 1350 (quoting 35 U.S.C. § 120).

> 35 U.S.C. § 154).  Determining whether one is actually excluded from making an invention is supposed to be a relatively straightforward process; the public should not be obliged to hunt through hundreds of documents in a lengthy prosecution history to find a patent's priority date.  *See* Kelly C. McKinney, *The Patent Reform Act of 2007 and International Patent Law Harmonization*, 31 Hous. J. Int'l L. 125, 141 (2008) (advocating for priority rule that will enhance legal certainty in the patent system).  "The purpose of the 'specific reference' requirement is clearly to ensure that someone examining a patent claiming the benefit of one earlier filed is readily able to assess the patent's priority date."  *Carotek, Inc. [v. Kobayashi Ventures, LLC,]* 875 F. Supp. 2d [313,] 335 [(S.D.N.Y. 2012)].

Worlds, Inc., 2014 WL 972135, at *6.  Because "courts have long-recognized that [the statute] 'embodies an important public policy,'" they "have required strict adherence to its requirements."  Droplets, 887 F.3d at 1316 (quoting Sampson v. Ampex Corp., 463 F.2d 1042, 1045 (2d Cir. 1972)).

### III. <u>ANALYSIS -- PRIORITY DATES OF THE '298 AND '739 PATENTS</u>

Dorel contends that it is entitled to a determination, as a matter of law, that the priority dates of the '298 and '739 Patents correspond to their application filing dates of January 20, 2015 and September 9, 2015, respectively.  (<u>See</u> Def. Mem. at 5-13).[5]  In particular, Dorel argues that for both the '298 and '739 Patents, Cozy/Dr. Rajasingham attempted to claim priority back to 1999 through a priority chain that included, *inter alia*, U.S. Patent No. 9,150,127 (the "'127 Patent"), which corresponds to Application No. 13/507,149 (the "'149 Application").  (<u>Id.</u> at 8-9).  It further asserts that the '127 Patent breaks the priority chain from 1999 to the '298 and '739 Patents because the '127 Patent shares no common subject matter with the

---

[5] "Def. Mem." refers to Dorel Juvenile Group, Inc.'s Memorandum of Law in Support of Motion for Summary Determination of Priority Dates for Asserted Patents (Docket No. 177).  Citations to page number in the parties' briefs refer to the parties' page numbering rather than the court's CM/ECF numbers.

Asserted Patents.  (See id. at 9-11).  This court agrees that the '127 Patent fails to maintain the continuity of disclosure necessary to support the chain of priority set forth in the '298 and '739 Patents, and that Cozy has failed to present sufficient facts to support a priority date other than the filing dates of those Patents.

### A.  **Relevant Facts**[6]

The following facts, which are relevant to the parties' dispute regarding the priority dates of the '298 and '739 Patents, are undisputed unless otherwise indicated.  Additional factual details relevant to his court's analysis are set forth below where appropriate.

Each of the Asserted Patents was filed by the inventor, Dr. Rajasingham, and was subsequently assigned to Cozy.  (DF ¶¶ 2-3).  The Asserted '298 Patent, entitled "Vehicle Occupant Support," relates to "[a] system of air cushions to protect during impact, an occupant in a vehicle seat comprising elements for protection of the head and neck."  (Def. Ex. 1 at p. 2 of

---

[6] The facts set forth herein are derived from the following materials filed in connection with Dorel's motion: (1) Local Rule 56.1 Statement of Undisputed Material Facts in Support of Dorel Juvenile Group, Inc.'s Motion for Early Determination of Priority Dates for Asserted Patents (Docket No. 178) ("DF"); (2) the exhibits attached to the Declarations of Alison C. Casey in Support of Defendant Dorel Juvenile Group Inc.'s Motion for Summary Determination of Priority Dates for Asserted Patents (Docket Nos. 179-84, 285) ("Def. Ex. __"); (3) Cozy, Inc.'s Responses to Dorel Juvenile Group, Inc.'s Statement of Material Facts (Docket No. 243 at pp. 1-9) ("PR"); (4) Cozy's Rebuttal Statement of Material Facts in Support of its Opposition to Dorel's Motion for Early Determination of Priority Dates for Asserted Patents (Docket No. 243 at pp. 10-23) ("PF"); and (5) the exhibits attached to the Declaration of Brent P. Ray in Support of Plaintiff Cozy, Inc.'s Responses to Dorel Juvenile Group, Inc.'s Statement of Material Facts and Cozy Inc.'s Rebuttal Statement of Material Facts in Support of its Opposition to Dorel Juvenile Group, Inc.'s Motion for Early Determination of Priority Dates for Asserted Patents (Docket No. 244) ("Pl. Ex. __").  As described in footnote 1 supra, Dorel has moved to strike the Declarations of Cozy's experts, Professor John R. Thomas and Dr. Richard Kent, which Cozy submitted in support of its opposition to Dorel's motion for summary determination of priority dates.  This court has stricken Dr. Kent's Declaration for the reasons detailed herein.  With respect to Professor Thomas, this court has allowed in part and denied in part Dorel's motion to strike his Declaration.  Accordingly, this court has relied on Professor Thomas' testimony, as appropriate, to the extent it has not been stricken.

57).[7]  It corresponds to Application No. 14/600,932 (the "'932 Application"), which was filed on

January 20, 2015.  (DF ¶ 4).  With respect to priority, it is undisputed Cozy claims the benefit of

U.S. Patent Application No. 09/435,830 (the "'830 Application"), which was filed on November

8, 1999 and corresponds to U.S. Patent No. 6,609,749 (the "'749 Patent").  (See DF ¶¶ 8-10; PR

¶¶ 8-10; PF ¶¶ 1-2).  Accordingly, Cozy claims that the '298 Patent has a priority date of

November 8, 1999.

The Asserted '739 Patent is entitled "Vehicle Occupant Support."  (Def. Ex. 2 at p. 2 of

55).  As described in the Abstract to the Patent, it relates to

> [a]n arrangement in passenger vehicles, that diverts the impact energy in lateral
> or side impacts away from the passengers to the remaining mass of the vehicle
> thereby protecting the passengers, and in the same arrangement provides
> utilitarian access to the vehicle, such utilitarian access making it possible to both
> install multi-element contoured surround seats for passengers and the driver, and
> also a safety device for head-on collision protection that obviates the need for
> conventional seat belts and front impact airbags.   An indo-skeletal structural
> arrangement proposed for the vehicle, provides further benefits by targeting the
> strength of the vehicle to protect passengers while minimizing other massive
> elements in the vehicle.   Side impact protection for the head and neck are
> proposed with airbags and aircushions.

(Id.).  The '739 Patent corresponds to Application No. 14/848,575 (the "'575 Application"),

which was filed on September 9, 2015.  (DF ¶ 6).  As in the case of the '298 Patent, Cozy claims

priority to the '830 Application and its November 8, 1999 filing date.  (See PR ¶¶ 8-10; Def. Ex.

11 at p. 4 of 8).

---

[7] Unless otherwise indicated, citations to page numbers from the parties' exhibits refer to the court's
CM/ECF numbers at the top of the parties' exhibits.

Dorel does not dispute that the '830 Application and the '749 Patent contain subject matter support for the Asserted Patents. (See DF ¶¶ 9-10). However, it contends that "[t]his subject matter, claimed by Cozy as 1999 support for its patent claims filed in 2015, is not present in the '127 patent." (Id. ¶ 11). It further reasons that because "Cozy has taken the position that its priority chain as to the '298 and '739 Asserted Patents runs through the '127 patent and other patents back to [the '830 Application]" (DF ¶ 8), Cozy cannot show that it satisfied the disclosure requirement of 35 U.S.C. § 120. (See Def. Mem. at 10-11).

As discussed more fully below, the '127 Patent (and its corresponding '149 Application) claims, *inter alia*,

> An occupant support in a vehicle comprising a base with an upward facing surface, and a mechanism supported by said upward facing surface, for reorientation of the occupant in response to a lateral inertial loading, wherein said mechanism comprises slides with a shell slidably mounted thereon ....

(Def. Ex. 15 at Col. 15 ll. 27-31). It does not use the same claim terms as the '298 and '739 Asserted Patents. It also uses completely different drawings and contains different embodiments than the Asserted Patents. The record supports Dorel's argument that the '127 Patent breaks the priority chain back to the '830 Application.

### B.  The Existence of the '127 Patent in the Priority Chain

The record demonstrates that the priority chains for the '298 and '729 Patents run back through the '127 Patent on their path to the '830 Application on which Cozy relies for its priority dates. Thus, the first paragraph of the '298 Patent provides in relevant part as follows:

**Related U.S. Application Data**

*Continuation-in-part of application No. 13/507,149, filed on Jun. 9, 2012, now Pat. No. 9,150,127, which is a continuation-in-part of application No. 11/639,088, filed on Dec. 14, 2006, now Pat. No. 8,251,444, which is a continuation-in-part of*

application No. 11/113,028, filed on Apr. 25, 2005, now Pat. No. 8,138,908, which is a continuation-in-part of application No. 10/109,674, filed on Apr. 1, 2002, now Pat. No. 7,159,923 ... *and a continuation-in-part of application No. 09/435,830, filed on Nov. 8, 1999, now Pat. No. 6,609,749,* ....

(Def. Ex. 1 at p. 2 of 57 (emphasis added)).  The first paragraph of the '739 Patent similarly provides:

### Related U.S. Application Data

*Continuation-in-part of application No. 13/507,149, filed on Jun. 9, 2012, now Pat. No. 9,150,127,* which is a continuation of application No. 11/639,088, filed on Dec. 14, 2006, now Pat. No. 8,251,444, which is a continuation-in-part of application No. 11/113,028, filed on Apr. 25, 2005, now Pat. No. 8,138,908, and a continuation-in-part of application No. 11/185,784, filed on Jul. 21, 2005, now Pat. No. 8,020,658, ... *which is a continuation-in-part of application No. 09/435,830, filed on Nov. 8, 1999, now Pat. No. 6,609,749,* ....

(Def. Ex. 2 at p. 2 of 55 (emphasis added)).  Furthermore, during discovery Cozy identified a priority chain for each of the '298 and '739 Patents that includes both the '830 Application/'749 Patent and the '149 Application/'127 Patent.  (Def. Ex. 5 at pp. 3-4 of 7).  Although Cozy also identified an alternative priority chain, that chain does not include the '830 Application on which Cozy is relying to assert a priority date of 1999.  (See id.).

### C.  Whether the '127 Patent Broke the Chain of Priority

As described above, Dorel argues that the '127 Patent breaks the chain of priority back to the '830 Application and fails to satisfy the disclosure requirement of 35 U.S.C. § 120 because it shares no common subject matter with the '298 and '739 Patents.  (Def. Mem. at 9-10).  Cozy challenges Dorel's argument on three separate grounds.  First, Cozy argues that this issue cannot be resolved as a matter of law because "a substantive, fact-intensive written description analysis" of the applications must be performed to determine whether the '127 Patent provides

subject matter support for the '298 and '739 Patents.  (Pl. Opp. Mem. at 8).[8]  Second, Cozy

argues that the '149 Application and the corresponding '127 Patent incorporated by reference

U.S. Patent Application 11/113,028, which is "largely identical" to the '830 Application, thereby

leaving priority back to 1999 "intact."  (Id.).  Third, Cozy argues that Dorel's motion must be

denied because the defendant failed to address the fact that the '298 Patent and '739 Patent

each claims more than one chain of priority leading back to 1999.  For the reasons that follow,

this court finds that there are no genuine issues of material fact and that Dorel is entitled to

judgment as a matter of law on these issues.

<u>The Written Description Requirement</u>

Federal Circuit law establishes that to satisfy the disclosure requirement of § 120, "each

application in the chain leading back to the earlier application must comply with the written

description requirement of 35 U.S.C. § 112."  <u>Hollmer</u>, 681 F.3d at 1355 (quoting <u>Zenon Env't,

Inc.</u>, 506 F.3d at 1378).  As the Federal Circuit has explained further:

> Section 112 requires a patent specification to contain a "written description of
> the invention and the manner and process of making and using it, in such full,
> clear, concise, and exact terms as to enable any person skilled in the art to which
> it pertains, or with which it is most nearly connected, to make and use the
> same."  35 U.S.C. § 112.  Thus, if the later filed application's claims are not set
> forth in the earlier filed application with the specificity that § 112 requires, the
> later filed application cannot claim the earlier filing date for those claims.  35
> U.S.C. § 120.
>
> Compliance with the written description requirement is a question of fact.  *See
> Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en
> banc*).  To satisfy the written description requirement, a patent's specification
> must reasonably convey to a person having ordinary skill in the art that the

---

[8] "Pl. Opp. Mem." refers to Cozy, Inc.'s Opposition to Dorel Juvenile Group, Inc.'s Motion for Summary
Determination of Priority Dates for Asserted Patents (Docket No. 242).

> inventor had possession of the later-claimed subject matter as of the earlier
> filing date.  *Id.*

Cummins-Allison Corp. v. SBM Co., Ltd., 484 Fed. Appx. 499, 505 (Fed. Cir. 2012).  Although the

question whether the written description requirement has been met is an issue of fact,

summary judgment is appropriate where "no reasonable fact finder could return a verdict for

the non-moving party."  PowerOasis, Inc., 522 F.3d at 1307.

For purposes of satisfying the written description requirement, it is not necessary that

each application "use the exact same terms[.]"  Goss Int'l Ams., Inc. v. MAN Roland, Inc., Civil

No. 03-cv-513-SM, 2008 WL 879725, at *2 (D.N.H. Mar. 28, 2008).  See also Cummins-Allison

Corp., 484 Fed. Appx. at 505 (explaining that "the earlier filed application need not describe the

later filed claims verbatim").  However, "the prior application 'must contain an equivalent

description of the claimed subject matter.  A description which renders obvious the invention

for which an earlier filing date is sought is not sufficient.'"  Goss Int'l Ams., Inc., 2008 WL

879725, at *2 (quoting Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1572 (Fed. Cir. 1997)).

Thus, as the Federal Circuit has held: "[w]hile the meaning of terms, phrases, or diagrams in a

disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all

the limitations must appear in the specification."  PowerOasis, Inc., 522 F.3d at 1306 (quoting

Lockwood, 107 F.3d at 1572).  Therefore, to maintain the priority chain from the Asserted

Patents to the '830 Application, the '149 Application, and hence the '127 Patent, must "actually

or inherently disclose the claim element[s]" of the '298 and '739 Patents.  See id.

<u>Whether the '127 Patent Provides Written</u>
<u>Description Support for the '298 and '739 Patents</u>

The record establishes that the '127 Patent lacks the necessary continuity of disclosure.

As an initial matter, there is virtually no overlap between the '298 and '739 Patents on the one

hand and the '127 Patent on the other hand.  <u>See</u> <u>Verizon Cal. Inc. v. Ronald A. Katz Tech.</u>

<u>Licensing, L.P.</u>, No. 01-CV-09871 RGK (RCX), 2003 WL 25761597, at *50 (C.D. Cal. Dec. 2, 2003)

(rejecting assertion by defendant's expert that previous application containing "a substantially

different specification" than the patent-in-suit could provide written description support for

claims of the later patent).  A comparison of the '298 and '739 Patents with the '127 Patent

demonstrates that the drawings are different, the described embodiments are different and the

claims of the earlier and later patents use different terminology to describe the respective

inventions.  (<u>Compare</u> Def. Exs. 1 & 2 <u>with</u> Def. Ex. 15; <u>see</u> <u>also</u> Def. Exs. 13 & 14 (containing

red-lined comparisons of the specification of the '127 Patent with the specifications of the '298

and '739 Patents)).  Therefore, a reading of the patents on their face belies the claim, set forth

in the first paragraph of the '298 and '739 Patents, that each of those Patents is a continuation-

in-part of the '149 Application.

The distinction between the subject matter disclosed in the earlier and later patents can

best be illustrated by the patents' respective claim limitations.  Thus, the claims of the '127

Patent read as follows:

The invention claimed is:

**1.** An occupant support in a vehicle comprising a base with an upward facing
surface, and a mechanism supported by said upward facing surface, for
reorientation of the occupant in response to a lateral inertial loading, wherein said
mechanism comprises slides with a shell slidably mounted thereon, wherein said
shell is adapted to translate along said slides and pivot with respect to said slides

[15]

in response to the lateral inertial loading, said mechanism further comprising a primary anatomical cushion and a secondary chamber, wherein the primary anatomical cushion and the secondary chamber are both filled with a viscous fluid and interconnected, thereby enabling measured volumes of the viscous fluid to vent from the primary anatomical cushion to the secondary chamber, such that under gentle pressure the viscous fluid vents from the primary anatomical cushion to the secondary chamber enabling the anatomical cushion to conform to an anatomical element of the occupant, but under said lateral inertial loading and resulting compression the primary anatomical cushion provides high levels of resistance to motion of the occupant.

**2.**　　An occupant support as in claim **1**, wherein said viscous fluid filled anatomical cushion is adapted to support the occupant's head.

**3.**　　An occupant support as in claim **1**, wherein said viscous fluid filled anatomical cushion is adapted to support the occupant's thorax.

**4.**　　An occupant support as in claim **2**, further comprising a headrest with a pair of pillow pads for support of the occupant's head enabled to articulate from an angled position to provide support for the occupant in a sleeping position and to a near vertical position to provide lateral support as the shell reorients during said lateral inertial loading.

**5.**　　An occupant support as in claim 2, further comprising a headrest with a pair of pillow pads for support of the occupant's head, further comprising a harness, wherein said pillow pads are enabled to articulate towards the occupant's head to reduce a gap between pillow pads when said harness provides support for a torso of the occupant under inertial loading in a forward direction.

(Def. Ex. 15 col. 15 l. 26 - col. 16 l. 32).  This needs to be compared with claim 1 of the '739

Patent, which is representative of the terminology used throughout the claims of the '298 and

'739 Patents.  The comparison highlights the differences between the invention claimed in the

'127 Patent and the inventions of the Asserted Patents.  Specifically, claim 1 of the '739 Patent

provides as follows:

The invention claimed is:

**1.**　　A child seat for use in a vehicle comprising:

[16]

a first airbag configured to protect an occupant during side impact to the vehicle, prefilled with air supplemented with a porous filling material within, and having a plurality of vents, configured to evacuate said air at a controlled rate upon impact during side impact to the vehicle;

wherein said first airbag pre-filled with air and with said porous filling material within is enabled to cushion the passenger ahead of impact;

wherein the seat is configured to be removably attached to the vehicle;

wherein the seat is configured to support a child;

wherein the seat is configured to provide lateral support to the child;

and wherein said supplementary porous filling material within and plurality of vents enable adjustment of compression characteristics during impact of said first airbag to protect the occupant under side impact conditions to the vehicle.

(Def. Ex. 2 col. 21 ll. 17-37).  While all three patents relate to the support and safety of a vehicle's occupants, there is virtually no overlap between the language used in the claims of the '127 Patent and the language used to describe the invention claimed in the '298 and '739 Patents.  On its face, therefore, the '127 Patent does not contain an equivalent description of the subject matter claimed in the '298 and '739 Patents.  See Lockwood, 107 F.3d at 1572 (explaining that for purposes of priority, a prior application must describe "*the invention*, with all its claimed limitations," rather than "that which makes it obvious.").

Cozy argues that a substantive, fact-intensive analysis informed by expert testimony must be conducted to determine whether a person having ordinary skill in the art ("POSA") of the invention would recognize that Dr. Rajasingham had possession of the later-claimed subject matter at the time he filed the '149 Application.  (Pl. Opp. Mem. at 8).  This court disagrees.  Where the material facts are undisputed, the question whether an intervening patent in a chain of priority maintained the requisite continuity of disclosure is a question of law.  Zenon Env't,

Inc., 506 F.3d at 1379.  In the instant case, the disclosures of the earlier and later patents are so starkly different that no POSA could reasonably conclude that the '149 Application contained "an equivalent description of the claimed subject matter" of the '298 and '739 Patents.  See Lockwood, 107 F.3d at 1572.

Cozy relies on the Declaration of its expert, Dr. Richard Kent, to raise an issue of fact as to whether the '149 Application provides written description support for the '298 and '739 Patents from the perspective of a POSA.[9]  (See Pl. Opp. Mem. at 10).  Therein, Dr. Kent states that in his opinion, the "'149 Application disclose[s] the inventions of the '739 and '298 Patents such that a POSA would have understood that Dr. Rajasingham was in possession of the invention at the time of filing." (Kent Decl. ¶ 31).[10]  Dr. Kent's opinion purports to be based on a comparison of the '149 Application with claim 1 of the '298 and '739 Patents and the '830 Application.[11]  It reflects a detailed analysis of the '149 Application, with a focus on finding support for each of the limitations set forth in claim 1 of the Asserted Patents.  (See Kent Decl. at Appendix C).  This court finds that Dr. Kent's opinions regarding priority are fundamentally flawed and unreliable because they improperly assume that the words in the '149 Application

---

[9] Cozy's second expert, Professor John R. Thomas, submitted a Declaration in which he provided opinions regarding the priority dates of the Asserted Patents.  (See Thomas Decl. ¶ 2).  However, Professor Thomas did not address the issue whether the applications in any of the Asserted Patents' priority chains provide written description support under 35 U.S.C. § 112.  (See id. ¶¶ 40, 42-78).  That issue was addressed by Dr. Kent.

[10] "Kent Decl." refers to the Declaration of Richard Kent, Ph.D. in Support of Plaintiff Cozy, Inc.'s Opposition to Dorel Juvenile Group, Inc.'s Motion for Summary Determination of Priority Dates for Asserted Patents (Docket No. 246).

[11] As stated above, Dorel does not challenge Cozy's assertion that the '830 Application, which became the '749 Patent, contains subject matter support for the '298 and '739 Patents.

and '127 Patent have the same meaning as different, construed terms of the '298 and '739 Patents. It is only by ignoring the defined terms of the Asserted Patents that Dr. Kent is able to opine that the '127 Patent discloses the same subject matter as the Asserted Patents. This contorted interpretation of the '127 Patent is insufficient to defeat Dorel's motion for a summary determination with respect to the priority dates of the '298 and '739 Patents.

As described above, Claim 1 of the '739 Patent recites "a first airbag configured to protect an occupant during side impact to the vehicle, prefilled with air supplemented with a porous filling material within, and having a plurality of vents, configured to evacuate said air at a controlled rate upon impact during side impact to the vehicle[.]" (Def. Ex. 2 col. 21 ll. 19-24). Claim 1 of the '298 Patent similarly recites "a first airbag configured to protect an occupant during side impact to the vehicle, prefilled with air supplemented with a porous filling material within, and having a plurality of vents configured to evacuate said air at a controlled rate upon impact during side impact to the vehicle[.]" (Def. Ex. 1 col. 24 ll. 7-12). In his Declaration, Dr. Kent equates the "airbag" of the '298 and '739 Patents with the "anatomical cushion" and "pillow pad" disclosed in the claims of the '127 Patent. Dr. Kent also states that the use of the terms "anatomical cushion" and "pillow pad" in the '127 Patent rather than the term "airbag" is not significant because "[a] POSA would understand that all these terms are simply referring to [a] passive airbag that protects [a] child's head." (Kent Decl. ¶ 26). As Dr. Kent reasons:

> [t]he key features of these passive airbags are described consistently ... despite the use of differing terminology. The airbags are passive. They use air flow and cushioning in concert to dissipate energy, mitigate impact, and thus protect a child. They are located and shaped for the protection of specific anatomical regions, especially the head, and they are intended for use in a child seat.

(Id. ¶ 29). The court's rulings on claim construction undermine this reasoning.

[19]

During claim construction, this court was asked to resolve the parties' disputes regarding a number of the terms used in claim 1 of the '298 and '739 Patents, including the terms "airbag," "prefilled" and "(controlled) rate."  (See Memorandum of Decision and Order on Issues of Claim Construction (Docket No. 152) ("Claim Construction Order"); Order on Cozy's Motion for Partial Reconsideration (Docket No. 267) ("Reconsideration Order")).  It was also asked to resolve the parties' disputes as to whether the claimed airbag was "vented," was limited to a single chamber or could consist of multiple chambers, and was "deflatable" or "retains a determinable volume of air."  (Claim Construction Order at 15-21).  The court engaged in an extensive analysis that is described in detail in its Claim Construction Order and Reconsideration Order.  Accordingly, the record demonstrates that the specific features and operation of the "airbag" are significant aspects of the patented inventions.  It also demonstrates that the term "airbag" has a distinct construction beyond the "key features" described by Dr. Kent in his Declaration.[12]  Dr. Kent's failure to acknowledge these distinctions renders his opinions unreliable.  Therefore, his Declaration must be stricken.  See Cordis Corp. v. Boston Sci. Corp., 658 F.3d 1347, 1357-58 (Fed. Cir. 2011) (disregarding expert testimony that was based on "an incorrect understanding of the claim construction.").

<u>Incorporation of Material by Reference</u>

Cozy also argues that the '149 Application provides written description support for the '298 and '739 Patents because it "incorporates by reference the full content of the ['830

---

[12] This is just one example of the many differences between the '127 Patent and the Asserted Patents. Another example is the '127 Patent's use of the term "viscous" to describe the fluid contained in the "anatomical cushion" and "secondary chamber" elements of the claims, which differs from the Asserted Patents' use of the term "porous" to described the filling material contained in the claimed "airbag."

Application." (Pl. Opp. Mem. at 10). In fact, it is undisputed that the '149 Application never

incorporated by reference the '830 Application. (See id. at 11-12). Instead, as discussed *infra*,

the '149 Application initially purported to incorporate by reference U.S. Patent Application No.

11/113,028 (the "'028 Application").[13] The '028 Application, according to Cozy, "is nearly

identical to the 1999 Application." (Id. at 12). Therefore, Cozy reasons that the '028

Application provided the continuity of disclosure necessary to maintain the priority chain back

to the '830 Application. (See id.). Ignoring the question whether incorporating a "nearly

identical" application was sufficient to incorporate the subject matter of the '830 Application,

Cozy's argument must fail because the undisputed facts establish that the '028 Application was

removed from the '149 Application and was never incorporated by reference into the '127

Patent.

"Incorporation by reference 'provides a method for integrating material from various

documents into a host document ... by citing such material in a manner that makes clear that

the material is effectively part of the host document as if it were explicitly contained therein.'"

Droplets, 887 F.3d at 1318 (quoting Zenon Env't, 506 F.3d at 1378) (punctuation in original).

Pursuant to 37 C.F.R. § 1.57, "'[e]ssential material' may be incorporated by reference, but only

by way of an incorporation by reference to a U.S. patent or U.S. patent application publication,

which ... does not itself incorporate such essential material by reference." 37 C.F.R. § 1.57(d).

"Essential material" is defined as material that is necessary to meet the requirements of 35

---

[13] The '028 Application issued as U.S. Patent No. 8,138,908 and is part of the priority chain that Cozy
identified in discovery with respect to the '298 and '739 Patents. (See Pl. Ex. 5 at pp. 3-4 of 7).

U.S.C. § 112, including "material that is necessary to ... [p]rovide a written description of the claimed invention[.]"  Id.; see also Droplets, 887 F.3d at 1318.  "Whether and to what extent a patent incorporates material by reference is a question of law[.]"  Droplets, 887 F.3d at 1318.

In this case, the record demonstrates that Dr. Rajasingham filed the '149 Application on June 9, 2012.  (PF ¶  35).  At that time, the '149 Application provided in relevant part that "[t]his application claims priority from and *hereby incorporates herein by reference: 11/113,028*; 11/185,784; 60/751,305 filed December 19, 2005; 60/848,804 filed September 29, 2006; 60/849,685 filed October 5, 2006; and the US provisional application filed by the applicant on September 20, 2006."  (Id. ¶ 37 (italicized emphasis added)).  The same language was included in paragraph [0001] of the '149 Application at the time the Application was published on February 21, 2013 as US 2013/0043705.  (Pl. Ex. O at p. 52 of 59).  Therefore, as of its publication date, the '149 Application explicitly incorporated by reference the entirety of the '028 Application.  See Paice LLC v. Ford Motor Co., 881 F.3d 894, 907 (Fed. Cir. 2018) (finding that language in application stating that "*U.S. Pat. No. 5,343,970 (the "'970 patent") [Severinsky], which is incorporated herein by this reference*" was "plainly sufficient to incorporate Severinsky in its entirety.").  It is undisputed that the '028 Application provides written subject matter support for the '298 and '739 Patents.  (PF ¶ 41).

The parties dispute whether the incorporation by reference of the '028 Application into the '149 Application at the time of its publication was sufficient to maintain the priority chain of the '298 and '739 Patents.  Cozy argues that the incorporation of the '028 Application into the '149 Application provided the subject matter support necessary to establish priority back to 1999.  (See Pl. Opp. Mem. at 10-12).  However, Dorel contends that no such support exists

because the Patent Examiner deleted the reference to the '028 Application before issuing the

'127 Patent and, therefore, no POSA could reasonably understand from reading the '127 Patent

that the '028 Application had been incorporated therein by reference.  (Def. Reply Mem. at 8-

9).[14]  The undisputed facts support Dorel's argument.

The record demonstrates that on or about August 17, 2015, the PTO issued a

Supplemental Notice of Allowability regarding the '149 Application.  (Def. Ex. 34 at p. 9 of 25).

In connection with the Notice, the Patent Examiner proposed the following amendment to the

'149 Application:

> *Replace the specification paragraph [0001] with* -- This application is a divisional
> of application number 11/639088 filed 14 December 2006 which claims benefit to
> provisional applications 60/751,305 filed December 19, 2005; 60/848,804 filed
> September 29, 2006 and 60/849,685 filed October 5, 2006. --

(Id. at p. 10 of 25 (emphasis added)).  Dr. Rajasingham authorized the amendment during a

telephone interview with the Patent Examiner on the same date.  (Id.).  Accordingly, the

paragraph claiming priority from and incorporating by reference the '028 Application was

replaced by the Patent Examiner's amendment.  There was no longer any language

incorporating the '028 Application by reference.

In a letter to the PTO dated August 20, 2015, Dr. Rajasingham requested an amendment

to the Patent Examiner's amendment.  (Id. at p. 7 of 25).  Specifically, Dr. Rajasingham

requested the addition of the following sentence immediately after the Examiner's language:

"Application Serial no 11/639,088 is a continuation-in-part of application numbers: 11/113,028

---

[14] "Def. Reply Mem." refers to Dorel Juvenile Group, Inc.'s Reply in Support of Motion for Summary
Determination of Priority Dates for Asserted Patents (Docket No. 284).

filed 25 April 2005 and now US 8,138,908 and 11/185,784 filed July 21, 2005 now US

8,020,658." (Id.).  Subsequently, in a letter to the PTO dated August 21, 2015, Dr. Rajasingham

requested a different amendment to the Patent Examiner's amendment "to include the chain

of priority to [the '028 Application] and 11/185,784 which are both noted in the first paragraph

of the originally filed application and are noted as priority documents to 11/639,088 in the filing

receipt of that application." (Id. at p. 4 of 25).  Specifically, in his second letter, Dr. Rajasingham

requested that the first paragraph of the '149 Application be amended to include the following

underlined language:

> Each of the foregoing applications are incorporated by reference herein and
> priority is claimed from each of the foregoing applications.
>
> This application is a divisional of application serial number 11/639,088 filed 14
> December 2006 which claims benefit to provisional applications 60/751,305 filed
> December 19, 2005; 60/848,804 filed September 29, 2006 and 60/849,685 filed
> October 5, 2006; application serial no 11/639,088 is a continuation-in-part of
> application numbers: 11/113,028 filed 25 April 2005 and now US 8,138,908 and
> 11/185,784 filed July 21, 2005 now US 8,020,658.

(Id.).

The PTO acknowledged receipt of Dr. Rajasingham's correspondence.  (Id. at pp. 2 of 25

and 5 of 25).  It also issued the '127 Patent on or about October 6, 2015.  (See Def. Ex. 15 at p. 2

of 63).  The '127 Patent includes the Patent Examiner's amendment but does not include the

language proposed by Dr. Rajasingham in his August 20, 2015 and August 21, 2015 letters to

the PTO.  (See Def. Ex. 15 col. 1 ll. 6-9).  Moreover, it is undisputed that the '127 Patent contains

no language incorporating any other patents or applications by reference.[15]  (See generally Def.

---

[15] After a patent issues, a patentee may amend a claim of priority, if the existing claim of priority was a
mistake, by seeking a certificate of correction.  (See Thomas Decl. ¶ 35).  Cozy has not presented

Ex. 15).  Therefore, Cozy's assertion that the '149 Application provided written description support for the '298 and '739 Patents by incorporating by reference the '028 Application lacks merit.  Dorel is entitled to a summary determination with respect to this issue.

### D.  Cozy's Claim of Alternative Priority Chains

Cozy's final argument with respect to the priority of the '298 and '739 Patents is that "[t]he '298 and '739 Patents each identify and contain multiple chains of priority on their face[,]" including an alternative chain that Cozy identified in its interrogatory responses, and that "[e]ach chain would require a Section 112 factual analysis for the Court to determine whether the claim of priority was supported by the disclosures, making this a genuine issue of material fact that cannot be disposed of through a Fed. R. Civ. P. 56 motion."  (Pl. Opp. Mem. at 13).  This argument too is unpersuasive.  As an initial matter, there is a "long-standing interpretation of priority as a single chain, growing with each additional continuation.  The Supreme Court has previously explained that under § 120, parent and continuing applications 'are to be considered as parts of the same transaction, and both as constituting one continuous application, within the meaning of the law.'"  Nat. Alts. Int'l, Inc., 904 F.3d at 1382 (quoting Godfrey v. Eames, 68 U.S. 317, 326, 1 Wall. 317, 17 L. Ed. 684 (1863)).  Cozy has not pointed to any specific information on the face of the '298 or '739 Patents that indicates the existence of multiple priority chains. [16]

---

evidence suggesting that Dr. Rajasingham sought to obtain a certificate of correction for the '127 Patent in order to incorporate the '028 Application by reference.

[16] Federal Circuit law recognizes that two different priority chains may exist for a single patent, but the patent must "recite two separate chains."  See Medtronic CoreValve, LLC v. Edwards Lifesciences Corp., 741 F.3d 1359, 1361 n.2 (Fed. Cir. 2014).

Even if the Asserted Patents recite multiple priority chains, Cozy has failed to present sufficient evidence of alternative chains claiming priority to 1999.  In its supplemental responses to Dorel's First Set of Interrogatories, Cozy only identified two priority chains for the '298 and '739 Patents, including the priority chain that runs through the '149 Application and an alternative chain that only dates back to 2005 and does not include the '830 Application on which Cozy bases its priority claims in the litigation.  (See Def. Ex. 5 at pp. 3-5 of 7).  To the extent Cozy contends that additional priority chains exist, its argument is insufficient to defeat Dorel's motion.  "Section 120 places the burden on the patent owner to provide a clear, unbroken chain of priority."  Droplets, 887 F.3d at 1317.  Cozy cannot raise an issue of fact by alluding to priority chains that have not been identified and on which it has not indicated it is attempting to rely in support of its claims in this case.  See id. ("Because the 'inventor is the person best suited to understand the relation of his applications,' it is 'no hardship to require him to disclose this information.'"  (quoting Sticker Indus. Supply Corp. v. Blaw-Knox Co., 405 F.2d 90, 93 (7th Cir. 1968)).

To the extent Cozy's argument regarding the existence of additional priority chains is based on the testimony of its expert, Professor Thomas, this too is insufficient to withstand summary determination in favor of Dorel.  In his Declaration, Professor Thomas testified that he found three chains of priority descending from the '298 Patent, but only one which claims priority back to the '830 Application.  (Thomas Decl. ¶ 42).  According to Professor Thomas, that chain of priority runs through the '149 Application.  (Id.).  For the reasons discussed above, Cozy has failed to present sufficient facts to show that the '149 Application contains the same subject matter as the Asserted Patents.

[26]

With respect to the '739 Asserted Patent, Professor Thomas testified that he found two primary chains of priority that descend from that Patent in addition to the one that runs through the '149 Application: a chain through the '183 application and a chain through the '413 application.  (Id. ¶ 60 & Appendix 4 thereto).  Of these, only the '183 application claims priority back to the 1999 '830 Application (See id. Appendix 4).  Therefore, the '413 application is irrelevant.  As discussed above, the '127 Patent broke the chain running from the '830 Application to the Asserted Patents.  Consequently, Cozy's attempt to argue another chain at this late date does not defeat summary judgment.

Moreover, it is not appropriate for the court to consider a priority chain running through Application No. 13/138,183 (the "'183 Application") back to the '830 Application since it was not listed by Cozy in its responses to Dorel's interrogatories.  (See Def. Ex. 5 at pp. 3-5 of 7).  Given the complex and confusing nature of Dr. Rajasingham's priority claims (see Def. Ex. 2 at pp. 2-3 of 55), and the fact that the parties are preparing for trial, any effort by Cozy to rely on a previously undisclosed priority chain at this late stage is inappropriate.   Furthermore, Professor Thomas has provided no foundation for his opinion that the '739 Patent claims priority through the '183 application back to the '830 Application.  Although Professor Thomas included this chain in a diagram attached as Appendix 4 to his Declaration, he included no discussion of the chain in his Declaration.  (See Thomas Decl. ¶¶ 60-78).  In particular, Professor Thomas did not explain how he identified it as a "primary chain of priority" from a list of related patent applications extending over three columns of text in the '739 Patent.  (See Def. Ex. 2 at pp. 2-3 of 55).  Nor did he explain how he traced the '183 application back to the '830 Application and why that would be proper.  (See Thomas Decl. ¶¶ 60-78).

Pursuant to Rule 702 of the Federal Rules of Evidence, "a qualified expert witness may testify 'in the form of an opinion, or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.'" United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) (quoting Fed. R. Evid. 702).  To be admissible, therefore, an expert's testimony must both rest on a reliable foundation and be relevant to the facts of the case. Bogosian v. Mercedes-Benz of N. Am., Inc., 104 F.3d 472, 476 (1st Cir. 1997).  Here, Professor Thomas has failed to explain the reasoning behind his conclusion that the '739 Patent contains a separate priority chain that begins with the '183 application and flows back to 1999. Accordingly, his opinion on this matter is not admissible on summary judgment and will be stricken.  Dorel has showed that it is entitled to a ruling as a matter of law that the priority dates of the '298 and '739 Patents correspond to the filing dates of their respective applications.

### IV. <u>ANALYSIS -- PRIORITY DATES OF THE '416 AND '835 PATENTS</u>

It is undisputed that Dr. Rajasingham initially intended to claim priority to September 24, 1997 with respect to the '416 and '835 Patents, and that he later attempted to amend his filings with the PTO to claim priority to November 8, 1999.  By its motion, Dorel is seeking a summary determination that the '416 and '835 Patents claim priority to September 24, 1997 because Dr. Rajasingham's attempts to claim priority to 1999 were unsuccessful.  This court concludes that Dorel is entitled judgment as a matter of law on this issue as well.

A.  **Relevant Facts**

The following facts are relevant to Dorel's motion regarding the priority dates of the

'416 and '835 Patents and are undisputed unless otherwise indicated.  Additional factual details

relevant to this court's analysis are set forth below where appropriate.

The '416 Patent, which is entitled "Easy Ejector Seat with Skeletal Crash Safety Beam,"

relates to

> [a]n arrangement in passenger vehicles, that diverts the impact energy in lateral
> or side impacts away from the passengers to the remaining mass of the vehicle
> thereby protecting the passengers, and in the same arrangement provides
> utilitarian access to the vehicle, such utilitarian access making it possible to both
> install multi-element contoured surround seats for passengers and the driver,
> and also a safety device for head-on collision protection that obviates the need
> for conventional seat belts and front impact airbags.  An indo-skeletal structural
> arrangement proposed for the vehicle, provides further benefits by targeting the
> strength of the vehicle to protect passengers while minimizing other massive
> elements in the vehicle.

(Def. Ex. 3 at p. 2 of 56).  It corresponds to Application No. 10/279,171 (the "'171 Application"),

which was filed on October 24, 2002.  (DF ¶ 15).  The '835 Patent is also entitled "Easy Ejector

Seat with Skeletal Crash Safety Beam" and relates to an arrangement that is essentially identical

to the one described in the '416 Patent.  (See Def. Ex. 4 at p. 2 of 69).  It corresponds to

Application No. 12/924,354 (the "'354 Application"), which was filed on September 24, 2010.

(DF ¶ 25).  To understand the priority dates for the Asserted Patents, it is necessary to trace the

history of the priority claims made by Dr. Rajasingham in his filings with the PTO.  The

undisputed facts regarding this history are as follows.

[29]

**Filings Relating to the '416 Patent**

As described above, Dr. Rajasingham filed the '171 Application on October 24, 2002.  In the first paragraph of his application, under the title of the invention, Dr. Rajasingham included a paragraph that read as follows:

> **CROSS REFERENCE TO RELATED APPLICATIONS:** This application is a divisional application of application numbers: 09/404,475 and 09/435,830 entitled 'Easy Ejector with skeletal crash safety beam" *and claims priority from S/N: 08/936,626 filed 9/24/97*.

(Pl. Ex. C at COZY_0000000115 (emphasis added)).  It is undisputed, based on this language and Dr. Rajasingham's subsequent communications with the PTO, that Dr. Rajasingham initially intended to claim priority to September 24, 1997.  (See DF ¶ 16; PR ¶ 16; Pl. Ex. C at COZY_0000000371, COZY_0000000383).  At issue is whether Dr. Rajasingham was ultimately able to claim priority to 1999.

The '171 Application was accompanied by a Utility Patent Application Transmittal sheet that was filled out by Dr. Rajasingham.  (Pl. Ex. C at COZY_0000000073).  The Transmittal Sheet required the patent applicant to indicate, among other things, whether the application was a continuation, divisional or continuation-in-part of a prior application.  (Id.).  Dr. Rajasingham indicated that the application was a divisional of Application Nos. 09/404,475 and 09/435,830.  (Id.).  Both of those Applications were filed in 1999.  (See Def. Ex. 3 at p. 55 of 56).  Thus, in a filing receipt acknowledging receipt of the '171 Application, the PTO noted that "[t]his application is a DIV of 09/404,475 09/24/1999 PAT 6,547,315 and is a DIV of 09/435,830 11/08/1999[.]"  (PF ¶ 3; Pl. Ex. C at COZY_0000000070).  The PTO made no mention of Dr. Rajasingham's claim of priority to the 1997 application.  (Id.).

On June 17, 2003, the Patent Examiner issued an Office Action concerning the '171 Application, in which she informed Dr. Rajasingham that his claims contained three different inventions and required him to elect one invention for purposes of examination. (Pl. Ex. C at COZY_0000000314-18). In his response to the Office Action, Dr. Rajasingham informed the PTO that he was electing to proceed with the prosecution of claims relating to a passive air cushion system and that he was also submitting amendments to his claims. (PF ¶ 5; Pl. Ex. C at COZY_0000000319-20). With respect to the amendments, Dr. Rajasingham requested that the PTO replace the existing language in the paragraph regarding "Cross Reference to Related Applications" with the following language:

> **CROSS REFERENCE TO RELATED APPLICATIONS:** This application is a divisional application of application numbers: 09/404,475 and 09/435,830 entitled "Easy Ejector with skeletal crash safety beam" *and claims priority from applications entitled "Easy Ejector with skeletal crash safety beam" S/N: 08/936,626 filed 9/24/97*, 09/404,475, 09/435,830, 09/779,694, 10/109,674.

(Pl. Ex. C at COZY_0000000319 (emphasis added)). Thus, Dr. Rajasingham was again claiming priority back to 1997.

The Patent Examiner issued another Office Action on January 7, 2004 in which she rejected all claims of the '171 Application as being anticipated by Sutherland (6,123,355). (Id. at COZY_0000000366-69; PF ¶ 6). It is undisputed that Sutherland has a priority date of 2000. (Pl. Ex. C at COZY_0000000370). Dr. Rajasingham filed a Response to the Office Action dated May 7, 2004. (Pl. Ex. C at COZY_0000000371). Therein, Dr. Rajasingham argued that Sutherland should not be considered prior art because the "present application has a priority date of September 24, 1997 for much of the disclosure which predates Sutherland[.]" (Id.). He also provided substantive arguments to distinguish his invention from Sutherland. (Id. at

[31]

COZY_0000000371-72).  On August 24, 2004, the Patent Examiner issued a second Office Action rejecting the claims of the '171 Application "as being anticipated by Wipasuramonton, et al (6,059,311)."  (Id. at COZY_0000000376).  The Examiner also noted that Dr. Rajasingham's arguments with respect to its prior Office Action had been considered "but are moot in view of the new ground(s) of rejection."  (Id. at COZY_0000000377).

Thereafter, in November 2004, Dr. Rajasingham submitted a Response to Office Action of 8/24/2004 in which he argued in relevant part that "Wipasuramonton (6,059,311) has a priority date of Feb. 21, 1998, while the present invention has material with a priority date of Sept. 24, 1997, which precedes the priority date of Wipasuramonton (6,059,311)."  (Id. at COZY_0000000383).  He also provided substantive arguments in which he distinguished his invention from Wipasuramonton.  (See id. at COZY_0000000388-89).  On March 28, 2005, the Patent Examiner issued a Final Office Action rejecting the claims of the '171 Application "as being anticipated by Wipasuramonton, et al (6,059,311)."  (Id. at COZY_0000000401).  With respect to Dr. Rajasingham's argument regarding priority dates, the Patent Examiner explained that his argument was unpersuasive because "[w]ith regards to the present invention priority date, the earliest priority date[ ] of record is September 24, 1999."  (Id. at COZY_0000000402).  Therefore, the PTO viewed the '171 Application as claiming priority to 1999 notwithstanding Dr. Rajasingham's effort to claim priority to 1997.

Dr. Rajasingham subsequently had an in-person interview with the Patent Examiner to discuss the rejected claims.  (PF ¶ 11).  The record shows that those parties were able to reach an agreement for Dr. Rajasingham to amend the substance of the claims in order to overcome Wipasuramonton.  (Pl. Ex. C at COZY_0000000405).  There is no indication that Dr. Rajasingham

[32]

and the Patent Examiner discussed Dr. Rajasingham's priority claims or his argument that

Wipasuramonton was not prior art due to the priority date of the '171 Application.  (See id.).

On July 28, 2005, Dr. Rajasingham submitted the agreed upon substantive amendments to the

'171 Application, with the understanding that they would render the claims allowable.  (Id. at

COZY_0000000406-18).  On August 26, 2005, the PTO issued a Notice of Allowance allowing the

'171 Application to be issued as a patent.  (Id. at COZY_0000000455-57).

　　　The '416 Patent was issued on January 2, 2007.  (Def. Ex. 3 at 2 of 56).  On the first page

of the Patent, in a paragraph entitled, "Related U.S. Application Data," the '416 Patent is

described as a division of application nos. 09/404,475 and 09/435,830, both of which were filed

in 1999.  (Id.).  There is no reference in that paragraph to Dr. Rajasingham's 1997 priority claim.

(Id.).  However, Column 1 of the '416 Patent contains a paragraph entitled, "Cross Reference to

Related Applications."  (Id. col. 1 ll. 4-5).  Therein, the Patent does provide, inter alia, that

"[t]his application ... claims priority from ... Ser. Nos. 08/936,626 filed Sep. 24, 1997[.]"  (Id. col.

1 ll. 7-13).

　　　On November 6, 2012, following a request by Dr. Rajasingham, the PTO issued a

Certificate of Correction, which is attached to the '416 Patent.[17]  (PF ¶ 14; Pl. Ex. C at

COZY_0000000481-90).  It corrects the paragraph entitled "Cross Reference to Related

Applications," which is found in column 1 of the Patent, by changing the language contained

---

[17] The PTO has authority to issue Certificates of Correction to correct certain mistakes made in good faith by a patent applicant.  See 35 U.S.C. § 255.  While Dorel challenges the veracity of Dr. Rajasingham's representations to the PTO that he made "mistakes" and/or acted in good faith in seeking Certificates of Correction, for purposes of the instant motion Dorel does not dispute the legitimacy of the issued Certificates of Correction.  (See Def. Reply Mem. at 16-19).

therein and reproducing it on the first page of the Patent.  (See Pl. Ex. C at COZY_0000000489).

The new language, which continues for nearly two pages, contains numerous references to

1997.  For example, but without limitation, it provides as follows:

> This application is a divisional of: Serial No. 09/404,475 filed September 24, 1999
> now U.S. Patent No. 6,547,315; and Serial No. 09/435,830 filed November 8, 1999
> now U.S. Patent No. 6,609,749.  *This application also claims priority to: Serial No.*
> *08/936,626 filed September 24, 1997 now U.S. Patent No. 6,059,354*; Serial No.
> 09/779,594 filed February 9, 2001 now U.S. Patent No. 7,255,389; and Serial No.
> 10/109,674 filed April 1, 2002 now U.S. Patent No. 7,159,923.
>
> *U.S. Patent No. 6,547,315 is a continuation of Serial No. 08/936,626 filed*
> *September 24, 1997 now U.S. Patent No. 6,059,354.*
>
> *U.S. Patent No. 6,609,749 is a continuation-in-part of Serial No. 08/936,626 filed*
> *September 24, 1997 now U.S. Patent No. 6,059,354*....

(Id. (emphasis added)).   Thus, it is undisputed that the Certificate of Correction includes claims

of priority to 1997.  (See PF ¶ 14 ("The certificate of correction expanded the number of chains

of priority for the '416 Patent and included chains stemming from the 1999 application as well

as some stemming from the 1997 application.")).

Despite the extensive filings in 2012, which included a priority date of 1997, in May,

June and August of 2016, Dr. Rajasingham submitted a Petition under 37 C.F.R. § 1.181,[18]

supplemental Application Data Sheets ("ADSs") pursuant to 37 C.F.R. § 1.76,[19] and a new

---

[18] 37 C.F.R. § 1.181 provides in relevant part that a "Petition may be taken to the Director [of the PTO]:
(1) From any action or requirement of any examiner in the ex parte prosecution of an application, or in
ex parte or inter partes prosecution of a reexamination proceeding which is not subject to appeal to the
Patent Trial and Appeal Board or to the court; (2) In cases in which a statute or the rules specify that the
matter is to be determined directly by or reviewed by the Director; and (3) To invoke the supervisory
authority of the Director in appropriate circumstances." 37 C.F.R. § 1.181(a).

[19] 37 C.F.R. § 1.76 governs the use of ADSs.  Pursuant to 37 C.F.R. § 1.76(a), an ADS "must be submitted
when required by § 1.55 or 1.78 to claim priority to or the benefit of a prior-filed application" under 35
U.S.C. § 120.

Request for Certificate of Correction for review by the PTO.  (See Pl. Ex. C at COZY_0000000492;

Def. Exs. 19-22).  Therein, Dr. Rajasingham sought to correct his priority claim for the '416

Patent to eliminate the claim of priority to 1997.  (Def. Exs. 19-22; DF ¶ 20).  In his ADSs, Dr.

Rajasingham requested that the PTO recognize a claim of priority to 1999 based on Application

No. 09/404,475, which was filed on September 24, 1999, and Application No. 09/435,830,

which was filed on November 8, 1999.  (Def. Exs. 19-20, 22).  Similarly, in his Request for

Certificate of Correction, Dr. Rajasingham requested that the cover page of the '416 Patent be

amended to include the following sentence: "(63) Divisional of Serial No. 09/435,830 filed 1999-

11-08 now U.S. Patent No. 6,609,749."  (Def. Ex. 21; PF ¶ 15).  In connection with his

submissions, Dr. Rajasingham provided the PTO with copies of a Filing Receipt dated April 3,

2003, the Transmittal sheet from the original '171 Application, a copy of the first paragraph of

the original specification, and relevant language from the first page of the published application

and the initially issued patent.  (PF ¶ 15).  According to Dr. Rajasingham, the correct priority

information was reflected in each of those documents, and he urged the PTO to find that a

claim of priority to 1999 was appropriate with respect to the '416 Patent.  (Pl. Ex. C at

COZY_0000000510).  Remarkably, Dr. Rajasingham did not include in his filings any references

to the November 6, 2012 Certificate of Correction, which included claims of priority to 1997.[20]

Consistent with his silence as to the prior "corrected" 1997 priority date, in his Request

for Certificate of Correction, Dr. Rajasingham did not ask to have any of the existing language

---

[20] In his 2016 filings, Dr. Rajasingham did not point out that the 1997 priority date had been significant in his earlier communications with the PTO challenging the PTO's determination that the '171 Application was anticipated by Wipasuramonton, which had a priority date of February 21, 1998.

replaced or otherwise struck from the '416 Patent.  (See Def. Ex. 21).  In particular, he did not

seek to strike or otherwise reference the existing claim of priority to 1997, as set forth in the

2012 Certificate of Correction.  (Id.).  Nor did Dr. Rajasingham indicate, in any of his ADSs, that

he had an existing claim of priority to 1997 and wished to remove that claim from the amended

patent.  Under 37 C.F.R. § 1.76, "[a]n application data sheet providing corrected or updated

information ... must identify the information that is being changed, with underlining for

insertions, and strike-through or brackets for text removed, except that identification of

information being changed is not required for an application data sheet included with an initial

submission under 35 U.S.C. 371."  37 C.F.R. § 1.76(c)(2).  While Dr. Rajasingham's ADSs included

underlined language indicating that he wished to have language inserted, they did not identify

any text, with strike-throughs or brackets, that Dr. Rajasingham was seeking to remove from

the '416 Patent.  (See Def. Exs. 20, 22).  Thus, the existence of a 1997 priority date was not

brought to the PTO's attention.

In August 2016, the PTO issued a decision regarding Dr. Rajasingham's Petition under 37

C.F.R. § 1.181.  (Pl. Ex. C at COZY_0000000531-32).  Therein, the PTO indicated that it had

reviewed the documents that Dr. Rajasingham had submitted with his request to correct his

priority claim, as well as his Request for Certificate of Correction and most recent ADS.  (Id. at

COZY_0000000531).  The PTO determined that the "[a]pplicant's most recent ADS indicates

that [the '171 Application] was a DIV of 09/404,475 and a DIV of 09/435,830[,]" and that the

PTO had "already recognized the priority claim to 09/404,475 and 09/435,830 as indicated in

the original filing receipt and the issued patent."  (Id. at COZY_0000000532).  Accordingly, the

PTO concluded that the "applicant's petition and request, under 37 C.F.R. § 1.181, for the [PTO]

[36]

to recognize the benefit claim in the instant application is a DIV of 09/404,475 and a DIV of

09/435,830 is **DISMISSED** as **MOOT**." (Id.).  Regardless of the PTO's rationale for this decision,

and whether it would have been different if Dr. Rajasingham had alerted it to the 2012

Certificate of Correction, it is undisputed that the PTO did not allow the proposed amendments

or grant Dr. Rajasingham's 2016 Request for Certificate of Correction.  Accordingly, the

November 6, 2012 Certificate of Correction, which claimed priority back to 1997, continues to

reflect the most recent amendments to the '416 Patent.  (See Def. Ex. 3 at 55-56 of 56).

### Filings Relating to the '835 Patent

As described above, Dr. Rajasingham filed the '354 Application, which became the '835

Patent, on September 24, 2010.  On the first page of the Application, Dr. Rajasingham included

a paragraph that read as follows:

> **THE FOLLOWING APPLICATIONS ARE HEREBY INCORPORATED HEREIN BY REFERENCE.  FURTHER, THIS APPLICATION CLAIMS PRIORITY FROM THE FOLLOWING APPLICATIONS:** *This application claims prior[i]ty from applications entitled "Easy Ejector with skeletal crash safety beam" US S/N: 08/936,626 filed 9/24/97*, US S/N 09/404,475, US S/N 09/435,830, US S/N 60/195298, US S/N 60,226,570, EPO S/N 98948260.9-2306, EPO S/N 00203896.6 and US 09/779,591, US 09/779,592, US 09/779,593, US 09/779,594; US 60/280470; US 60/282105; US 60/286629; US 60/332419; US 60/338466; US 60/367644; US 60/461,434; US 10/279,171; 60/362450; 10/109,674 and 10/681,304.

(Pl. Ex. D at COZY_0000000832 (emphasis added; punctuation omitted)).  It is undisputed that

the '354 Application initially claimed priority, at least in part, to September 24, 1997.  (DF ¶ 26;

PR ¶ 26; PF ¶ 18).  The parties dispute whether the priority claim was later amended to 1999.

(See PR ¶ 26).

The '354 Application was accompanied by a Utility Patent Application Transmittal Sheet.

(See Pl. Ex. D at COZY_0000000828).  Therein, Dr. Rajasingham indicated that the '354

Application was a divisional of Application No. 11/185,784, which was filed on July 21, 2005. (Id.; Def. Ex. 27 at p. 3 of 5).  In a Filing Receipt acknowledging receipt of the '354 Application, the PTO noted, under the heading "**Domestic Priority data as claimed by applicant**," that "[t]his application is a DIV of 11/185,784 07/21/2005 ABN."  (Pl. Ex. D at COZY_0000000928). The PTO did not reference Dr. Rajasingham's claim of priority to anything prior to 2005.

On January 21, 2011, the Patent Examiner issued an Office Action regarding the '354 Application in which she rejected claims 1-4 of the Application "as being anticipated by Brown (5,913,536)" and claim 5 "as being unpatentable over Balgobin (6,056,336)."  (Id. at COZY_0000001082-85).  The record establishes that Brown was filed in June 1999 and that Balgobin was filed in May 2000.  (Id. at COZY_0000001088).  It also establishes that the Patent Examiner considered prior art from 1994 through 2010.  (Id.).  Dr. Rajasingham submitted a response to the January 2011 Office Action on April 21, 2011.  (Id. at COZY_0000001092-94). Therein, Dr. Rajasingham provided substantive arguments to distinguish his application from Brown and Balgobin, but he did not argue that those references could not be considered prior art due to the priority date asserted in the '354 Application.  (See id.).  On June 24, 2011, the Patent Examiner issued a Final Office Action in which she allowed claims 5-7 of the '354 Application but rejected claims 1-4 "as being unpatentable over Brown (5,913,536) in view of Yamato, et al. (2003/0019387)."  (Id. at COZY_0000001097-101).   The record indicates that Yamato, et al. was filed in January 2003.  (Id. at COZY_0000001102).

Subsequently, in July 2011, Dr. Rajasingham participated in an interview with the Patent Examiner and then filed a Response to the June 24, 2011 Office Action.  (Id. at COZY_0000001104).  In his Response, Dr. Rajasingham submitted amended claims addressing

[38]

the Patent Examiner's comments.  (Id. at COZY_0000001104-06).  Dr. Rajasingham did not

argue that the priority date of his application preceded the prior art.  (See id.).  Nor did he

attempt to amend the existing priority claims of the '354 Application.  (See id.).   On August 24,

2011, the Patent Examiner issued another Office Action in which she continued to reject a

number of claims as being unpatentable in light of the prior art.  (Id. at COZY_0000001111-14).

The record indicates that the Patent Examiner considered prior art references from 1958-2008

in connection with her decision.  (Id. at COZY_0000001116-17).  In a Response to the August 24,

2011 Office Action, Dr. Rajasingham addressed the Patent Examiner's rejections by providing

substantive amendments to his claims but he did not argue that the priority date of his

application preceded the prior art.  (See id. at COZY_0000001120-22).  On November 28, 2011,

the Patent Examiner issued a Notice of Allowance allowing the '354 Application to be issued as

a patent.  (Id. at COZY_0000001124-26).

  The '835 Patent was issued on March 20, 2012.  (Def. Ex. 4 at p. 2 of 69).  In contrast to

the other Asserted Patents, the first page of the '835 Patent contains no related U.S. application

data from which the Patent claims a benefit.  (See id. and Compare Def. Ex. 1 at pp. 2-3 of 57;

Def. Ex. 2 at pp. 2-3 of 55; Def. Ex. 3 at p. 2 of 56).  The first paragraph of Column 1, which is

headed "THE FOLLOWING APPLICATIONS ARE HEREBY INCORPORATED HEREIN BY REFERENCE.

FURTHER, THIS APPLICATION CLAIMS PRIORITY FROM THE FOLLOWING APPLICATIONS[,]"

provides, in relevant part, that "[t]his application claims priority from applications entitled 'Easy

Ejector with skeletal crash safety beam' U.S Ser. No. 08/936,626 filed Sep. 24, 1997 ...."  (Def.

Ex. 4 col. 1 ll. 4-8, 10-12).  Numerous additional applications are listed in the paragraph by serial

number but no other filing dates are specified.  (See id. col. 1 ll. 12-20).

In September 2012, Dr. Rajasingham filed a Request for Certificate of Correction to the '835 Patent in order "to clarify the relationships and/or filing dates of priority applications and patents previously listed in the originally submitted application." (Pl. Ex. D at COZY_0000001138). Therein, Dr. Rajasingham requested that Column 1, lines 10-20 be changed to consist of language spanning two pages of text, and that the amended language be reproduced on the first page of the '835 Patent. (Id. at COZY_0000001139-41). Specifically, he proposed to maintain the heading found at Column 1, lines 4-8, which provides that "THE FOLLOWING APPLICATIONS ARE HEREBY INCORPORATED HEREIN BY REFERENCE" and that "THIS APPLICATION CLAIMS PRIORITY FROM THE FOLLOWING APPLICATIONS[,]" but to amend the list of applications and patents that followed. (See Def. Ex. 4 col. 1 ll. 4-8). On December 18, 2012, the PTO allowed Dr. Rajasingham's request and issued a Certificate of Correction, which is attached to the '835 Patent. (See Pl. Ex. D at COZY_0000001142-44; Def. Ex. 4 at pp. 65-67 of 69). The Certificate of Correction includes more than two pages of text that begins as follows:

> Column 1, lines 10-20 should be changed to the following and reproduced on the first page of the Patent:
>
> Each of the foregoing applications are incorporated by reference herein.
>
> This application is a divisional of Serial No. 11/185,784 filed July 21, 2005 now U.S. Patent No. 8,020,658.
>
> U.S. Patent No. 8,020,658 is a continuation of: Serial No. 10/681,304 filed October 9, 2003 now U.S. Patent No. 7,175,221; Serial No. 09/779,594 filed February 9, 2001 now U.S. Patent No. 7,255,389; and Serial No. 10,109/674 filed April 1, 2002 now U.S. Patent No. 7,159,923. U.S. Patent No. 8,020,658 also claims priority to: EP Application No. 00203896 filed November 7, 2000 now EP Patent No. 1099607; and EP Application No. 9894828260 filed September 17, 1998 now EP Patent No. 1021320....

(Def. Ex. 4 at p. 65 of 69).  The subsequent paragraphs consist of priority claims referencing

numerous patent applications, including but not limited to, applications from as far back as

1997.  For example, but without limitation, the Certificate of Correction specifies that U.S.

Patent No. 7,255,389 is a continuation-in-part of various applications including "Serial No.

08/936,626 filed September 24, 1997 now U.S. Patent No. 6,059,354[.]"  (Id. at p. 66 of 69).  It

also provides, *inter alia*, that "EP Application No. 98948260 claims priority to Serial No.

08/936,626 filed September 24, 1997 now U.S. Patent No. 6,059,354."  (Id.).  It is undisputed

that the December 18, 2012 Certificate of Correction includes claims of priority to 1997.  (See

DF ¶ 29; PR ¶ 29; PF ¶ 28).

Five years later, in June 2017, Dr. Rajasingham submitted a Petition [under] 37 C.F.R. §

1.78 [for] Delayed Benefit Claims,[21] along with an ADS and a new Request for Certificate of

Correction.  (Pl. Ex. D at COZY_0000001153-64).  By his submissions, Dr. Rajasingham sought to

correct his priority claims for the '835 Patent.  (See Pl. Ex. D at COZY_0000001163).  In

particular, as shown in his ADS and Request for Certificate of Correction, Dr. Rajasingham

sought to add language on the first page of the '835 Patent claiming the benefit of applications

dating back to 1999.  (See id. at COZY_0000001155-58; COZY_0000001163-64).  Significantly,

---

[21] 37 C.F.R. § 1.78 addresses, among other things, "[d]elayed claims under 35 U.S.C. 119(e) for the benefit of a prior-filed provisional application" and "[d]elayed claims under 35 U.S.C. 120, 121, 365(c), or 386(c) for the benefit of a prior-filed nonprovisional application, international application, or international design application."  37 C.F.R. § 1.78(c) and (e).  It provides for the acceptance of a priority claim that was not submitted during the pendency of the later-filed application, as required by paragraphs (a)(4) and (d)(3) of the regulation, where the applicant's delay in presenting the priority claim was unintentional.  See id.  For present purposes Dorel does not challenge the legitimacy of Dr. Rajasingham's Petition for Delayed Benefit Claims although it continues to challenge Dr. Rajasingham's motivation for filing the Petition.  (See Def. Mem. at 18-19; Def. Reply Mem. at 17-19).

however, Dr. Rajasingham did not reference the language set forth in the December 18, 2012

Certificate of Correction claiming priority back to 1997, and did not seek to strike any of the

existing language from the '835 Patent.  Thus, in his Request for Certificate of Correction, Dr.

Rajasingham did not request to have any of the language set forth in Column 1 and reproduced

on the first page of the Patent replaced by the new language or struck from the Patent.  (See id.

at COZY_0000001163-64).  Similarly, in his ADS, Dr. Rajasingham did not identify any text, with

strike-throughs or brackets, that he was seeking to strike from the '835 Patent.  (See id. at

COZY_0000001154-59).

On August 16, 2017, the PTO issued a decision granting Dr. Rajasingham's petition "to

accept an unintentionally delayed claim under 35 U.S.C. 119(e) and 120 for the benefit of

priority to one or more prior-filed provisional and nonprovisional/international applications."

(Id. at COZY_0000001206-07).  In its decision, the PTO found that the petition had been

accompanied by the information specified by 37 C.F.R. § 1.78(c) and (e), and that "a proper

reference to the prior-filed applications [had] been included in an application data sheet or in

an amendment to the first sentence of the specification" as required by the regulation.  (Id. at

COZY_0000001206).  The PTO also issued a "Corrected Filing Receipt" as an attachment to its

decision.  (See id. at COZY_0000001207 (noting attached corrected filing receipt)).  The receipt

contained a description of the "Domestic Priority data as claimed by applicant."  (Id. at

COZY_0000001202-03).  That data consisted of a list of applications and corresponding patents,

but only dating back to 1999.  (Id.).

The PTO also allowed Dr. Rajasingham's June 2017 Request for Certificate of Correction

and issued a new Certificate of Correction on May 1, 2018.  (Id. at COZY_0000001208-09).  The

[42]

new Certificate of Correction is attached to the '835 Patent.  (Def. Ex. 4 at p. 68 of 69).  It

provides for the inclusion of the language proposed in the Request for Certificate of Correction

on the title page of the Patent.  (See id.).  However, it does not purport to remove the language

contained in the 2012 Certificate of Correction incorporating by reference and claiming priority

to the applications listed therein and dating back to 1997.

### Whether the '416 Patent Claims Priority to 1997 or 1999

Dorel has moved for a summary determination that the '416 Patent claims priority to

September 24, 1997, the date on which Dr. Rajasingham relied when he originally filed the '171

Application in October 2002.  (Def. Mem. at 13-14).  Dorel argues that Dr. Rajasingham

succeeded in confirming this claim when the PTO issued the November 6, 2012 Certificate of

Correction listing applications dating back to September 24, 1997, and that his effort in 2016 to

change his priority claim to 1999 was ineffective because he failed to delete any references to

the 1997 application or otherwise amend the language set forth in the 2012 Certificate of

Correction.  (Id. at 14-16).  Cozy counters that the prosecution history of the '416 Patent

demonstrates that Dr. Rajasingham properly claimed priority to 1999.  (Pl. Opp. Mem. at 14-

18).  It argues that its position is supported by evidence of Dr. Rajasingham's communications

with the PTO and the PTO's consistent recognition of a 1999 priority date.  (Id. at 15-18).  It also

argues that the 2012 Certificate of Correction, which claimed priority to 1997, was ineffective

because Dr. Rajasingham failed to submit an ADS or petition to adjust his priority dates at the

time he filed his Request for Certificate of Correction.  (See id.).  For the reasons detailed below,

this court finds that the undisputed facts support Dorel's arguments and that the defendant is

entitled to judgment as a matter of law on this issue.

[43]

The parties' arguments on this issue relate to the so-called "specific reference" requirement of 35 U.S.C. § 120, which "requires that [a] patent application 'contain a specific reference to the earlier filed application' to which it purports to claim priority." Droplets, 887 F.3d at 1315 (quoting 35 U.S.C. § 120). The PTO has issued regulations implementing this statute and addressing the steps necessary to satisfy the specific reference requirement. See id. Specifically, 37 C.F.R. § 1.78 requires that an application claiming the benefit of one or more prior-filed nonprovisional applications pursuant to 35 U.S.C. § 120 "must include 'a reference to each such prior-filed application, identifying it by application number (consisting of the series code and serial number)' and indicating 'the relationship of the applications (i.e., whether the later-filed application is a continuation, divisional, or continuation-in-part of the prior-filed nonprovisional application or international application).'" Id. (quoting 37 C.F.R. § 1.78(d)(3) (2009)). See also 37 C.F.R. § 1.78(d)(2) (2015) (setting forth the same requirements in the current version of the regulation). It further requires, in relevant part, that where the later-filed application is a nonprovisional application, as in the case of the Asserted Patents, the required reference "must be included in an application data sheet (§ 1.76(b)(5))." 37 C.F.R. § 1.78(d)(2) (2015). However, for applications that were filed before September 16, 2012, the requirement that a prior-filed application be presented in an ADS, "will be satisfied by the presentation of such specific reference in the first sentence(s) of the specification following the title in a nonprovisional application filed under 35 U.S.C. 111(a) before September 16, 2012." Id. § 1.78(h). Finally, the regulation provides in relevant part that the specific reference required thereunder and by 35 U.S.C. § 120 "must be submitted during the pendency of the later-filed application." Id. § 1.78(d)(3)(i). Nevertheless, it allows for the acceptance of delayed

[44]

priority claims where the patentee files a petition that includes, among other information, "[a] statement that the entire delay between the date the benefit claim was due under paragraph (d)(3) ... and the date the benefit claim was filed was unintentional." Id. § 1.78(e)(3).

As indicated above, the PTO has also issued regulations governing the use of ADSs. Those regulations, which are set forth in 37 C.F.R. § 1.76, provide in relevant part that "[a]n application data sheet ... must be submitted when required by ... 1.78 to claim priority to or the benefit of a prior-filed application" under 35 U.S.C. § 120, and they specify that "[i]f an [ADS] is provided, the [ADS] is part of the application for which it has been submitted." 37 C.F.R. § 1.76(a). The regulations describe the information that should be included in an ADS, referred to as "bibliographic data," as well as the appropriate procedures, described *supra*, for correcting and updating the information contained in an ADS. See id. §§ 1.76(b) and (c). Additionally, the ADS regulations address situations where inconsistencies exist between an ADS and "other documents," and specify that "[f]or inconsistencies between information that is supplied by both an [ADS] under this section and other documents: ... [t]he most recent [ADS] will govern with respect to ... domestic benefit (§ 1.78) claims[.]" Id. § 1.76(d)(1)(i).

In the instant case, the parties dispute whether Dr. Rajasingham, in his initial filings with the PTO, established a priority date of 1997 or a priority date of 1999 with respect to the '171 Application. Dorel argues that Dr. Rajasingham's early filings established a priority date of September 24, 1997, whereas Cozy argues that from the beginning, Dr. Rajasingham only claimed priority to 1999, notwithstanding any of his efforts to assert a 1997 priority date. (Def. Mem. at 13-14; Pl. Opp. Mem. at 15-18). The undisputed facts establish that Dr. Rajasingham initially attempted to claim priority to 1997 in his application for the '416 Patent. (See DF ¶¶

[45]

16-17; PR ¶¶ 16-17; Pl. Ex. C at COZY_0000000371).  They also establish that throughout the

time period from the filing of the '171 Application through its allowance on August 26, 2005,

the PTO viewed the '171 Application as claiming priority to September 24, 1999.  (See Pl. Ex. C

at COZY_0000000070, COZY_0000000402).  This court finds that it is not necessary to resolve

the question of which priority date should apply to Dr. Rajasingham's early filings because the

issue of priority turns on the effectiveness of the Certificates of Correction that were issued

after the PTO issued the '416 Patent.

The undisputed facts show that the November 6, 2012 Certificate of Correction

established a 1997 priority date with respect to the '416 Patent.  Thus, the record demonstrates

that the 2012 Certificate of Correction was approved by the PTO and attached to the '416

Patent.  (PF ¶ 14).  It expressly provides for changes to Column 1, lines 7-14 of the Patent and

calls for those changes to be "reproduced on the first page of the Patent[.]"  (Def. Ex. 3 at p. 55

of 56).  It also provides that "[t]his application is a divisional of: Serial No. 09/404,475 filed

September 24, 1999 now U.S. Patent No. 6,547,315; and Serial No. 09/435,830 filed November

8, 1999 now U.S. Patent No. 6,609,749[;]" that "U.S. Patent No. 6,547,315 is a continuation of

Serial No. 08/936,626 filed September 24, 1997 now U.S. Patent No. 6,059,354[;]" and that

"U.S. Patent No. 6,609,749 is a continuation-in-part of Serial No. 08/936,626 filed September

24, 1997 now U.S. Patent No. 6,059,354."  (Id.).  Moreover, the changes expressly claim priority

to "Serial No. 08/936,626 filed September 24, 1997 now U.S. Patent No. 6,059,354[,]" as well as

to other, later-filed applications.  (Id.).  Accordingly, the Certificate of Correction claims a

benefit to applications dating back to 1997.  This evidence supports Dorel's motion for a

summary disposition of priority with respect to the '416 Patent.

[46]

Cozy does not dispute that the 2012 Certificate of Correction claims priority to 1997, but it argues that it also claims priority to 1999.  Specifically, Cozy asserts that Dr. Rajasingham requested a Certificate of Correction in 2012 in order "to expand the number of priority chains for the '416 Patent" and that the Certificate that was issued "included chains stemming from the 1999 application as well as some stemming from the 1997 application."  (Pl. Opp. Mem. at 18; PF ¶ 14).  However, Cozy has made no effort to explain how the 2012 Certificate of Correction claims more than one priority chain.  Nor has it presented any evidence to support its argument.  As detailed above, priority is ordinarily understood "as a single chain[.]"  Nat. Alts. Int'l, Inc., 904 F.3d at 1382.  Based on the record before this court, there is no basis to conclude otherwise with respect to the '416 Patent.

Cozy also argues that the 2012 Certificate of Correction "was neither properly submitted nor operative" because Dr. Rajasingham did not submit an ADS or petition to adjust his priority dates at the time he requested a Certificate of Correction.  (Pl. Opp. Mem. at 18).  This court disagrees.  For applications filed before September 16, 2012, a patentee may satisfy the specific reference requirement for claiming priority by including the specific reference in an ADS or "in the first sentence(s) of the specification following the title[.]"  37 C.F.R. § 1.78(h).  Here, it is undisputed that the '171 Application was filed long before 2012 and that the changes set forth in the 2012 Certificate of Correction were to be "reproduced on the first page of the Patent[.]"  (Def. Ex. 3 at p. 55 of 56).  Therefore, it appears that Dr. Rajasingham's request for a Certificate of Correction was appropriate.  In any event, there is no question that the PTO allowed the request and issued a Certificate of Correction that changed the priority claims contained in the '416 Patent, thereby notifying the public that the Patent claimed priority to September 24,

1997.  See Droplets, 887 F.3d at 1320 (emphasizing the notice function of the "specific

reference" requirement).  Accordingly, this court finds that the changes were effective.

Nevertheless, Cozy relies on the PTO's response to Dr. Rajasingham's 2016 Petition

under 37 C.F.R. § 1.181 to argue that the '416 Patent reflected a priority date of 1999.  (Pl. Opp.

Mem. at 18).  As detailed above, in that response the PTO dismissed "as moot" Dr.

Rajasingham's efforts to change the priority date to 1999 because it had previously recognized

the priority date back to 1999.  Cozy argues that "if the [PTO] believed the matter was clear,

such a determination should be accorded great weight when determining whether it was clear

from the public record whether the '416 Patent correctly claims priority to 1999."  (Pl. Opp.

Mem. at 18).  Again this court disagrees.

The record indicates that none of the documents the PTO considered in connection with

the 2016 Petition referenced the 2012 Certificate of Correction with the 1997 priority date or

otherwise alerted the PTO to its existence.  (See Pl. Ex. C at COZY_0000000531 (describing

documents considered by the PTO)).  As the PTO stated in its decision dismissing the Petition,

all of the pre-2016 documents it reviewed reflected the fact that the '171 Application was a

divisional of Application Nos. 09/404,475 and 09/435,830.  Thus, the PTO apparently did not

consider the November 2012 Certificate of Correction, which provided that the patent

corresponding to Application No. 09/404,475 "is a continuation of Serial No. 08/936,626 filed

September 24, 1997[,]" and the patent corresponding to Application No. 09/435,830 "is a

continuation-in-part of Serial No. 08/936,626 filed September 24, 1997[.]"  (See Def. Ex. 3 at p.

55 of 56).  Additionally, as described above, Dr. Rajasingham made no references to the 2012

Certificate of Correction in his 2016 Request for Certificate of Correction and did not indicate, in

[48]

any of the ADSs that he submitted in 2016, that he was seeking to amend or remove the

language that had been added by the 2012 Certificate of Correction.  (See Def. Exs. 20-22).  Nor

did he indicate that he had previously taken the position with the PTO that because of the 1997

priority date, the '416 Patent was not anticipated by Wipasuramonton, which was issued in

1998.  (See footnote 19 *supra*).  Because it appears that the PTO did not consider the 2012

Certificate of Correction when it reviewed Dr. Rajasingham's 2016 request to amend his priority

claim, this court declines to give any weight to its comments regarding priority.  Additionally,

because the 2012 Certificate of Correction claims priority to September 24, 1997, and was

never amended, Dorel's motion is allowed with respect to the '416 Patent.

     **B.**  **Whether the '835 Patent Claims Priority to 1997 or 1999**

     The parties' arguments with respect to the '835 Patent are similar to their arguments

regarding the '416 Patent.  Dorel argues that the priority date for the '835 Patent is September

24, 1997, as indicated on the first page of the '354 Application and confirmed in the first

Certificate of Correction that was issued by the PTO on December 18, 2012.  (Def. Mem. at 17-

18).  While Dorel acknowledges that the PTO granted Dr. Rajasingham's 2017 Petition for

Delayed Benefit Claims and issued a second Certificate of Correction claiming the benefit of

applications dating back only to 1999, Dorel argues that those filings were ineffective because

Dr. Rajasingham failed to delete his earlier priority claims in his 2017 ADSs or put the PTO on

notice that he was eliminating his earlier priority claims.  (Id. at 18-20).  However, Cozy argues

that the second, later filed Certificate of Correction is controlling and properly claims priority

back to 1999.  (Pl. Opp. Mem. at 19).  It also argues that the first, 2012 Certificate of Correction,

was ineffective because Dr. Rajasingham did not file an ADS or Petition for Delayed Benefit

[49]

Claim when he filed his Request for Certificate of Correction in September 2012.  (Id.)  This court finds that Dorel is entitled to a ruling in its favor with respect to these issues.

As described above, the record establishes that the '354 Application initially claimed priority, at least in part, to September 24, 1997, but that the PTO only recognized a priority claim to July 21, 2005.  (DF ¶ 26; PR ¶ 26; PF ¶ 19; Pl. Ex. D at COZY_0000000928).  As in the case of the '416 Patent, the question whether Dr. Rajasingham's early filings relating to the '835 Patent claimed priority to 1997 or 1999 does not need to be decided because the issue of priority turns on the effectiveness of the Certificates of Correction that were issued after the PTO issued the '835 Patent.  The undisputed evidence relating to those filings supports Dorel's assertion that the first Certificate of Correction, which was dated December 18, 2012 and attached to the '835 Patent, claims priority to September 24, 1997.  It also demonstrates that Dr. Rajasingham's later efforts to amend the Patent to claim priority to 1999 were ineffective as a matter of law.

It is undisputed that the 2012 Certificate of Correction "include[s] priority claims back to the 1997 Application."  (Pl. Opp. Mem. at 19).  To the extent Cozy suggests that there are or may be multiple chains of priority (see PF ¶ 28), any such argument is at odds with "the long-standing interpretation of priority as a single chain[.]"  Nat. Alts. Int'l, Inc., 904 F.3d at 1382. Moreover, Cozy has not presented any evidence, or provided any specific basis, to support such a contention.  While the contents of the 2012 Certificate of Correction are lengthy and extremely complicated, they repeatedly claim priority back to Serial No. 08/936,626 filed September 24, 1997 now U.S. Patent No. 6,059,354, and do not indicate that there are multiple chains of priority.  (See Def. Ex. 4 at 65-67 of 69).  Therefore, Dorel has shown that the '835

[50]

Patent, as amended by the 2012 Certificate of Correction, claimed priority to September 24, 1997.

Cozy argues that "this initial Certificate of Correction was ineffective because it was not filed with any accompanying ADS or 37 CFR 1.78 Petition." (Pl. Opp. Mem. at 19). As in the case of the '416 Patent, however, Dr. Rajasingham filed the '354 Application before September 16, 2012. (See DF ¶ 25). Therefore, Dr. Rajasingham could satisfy the specific reference required for claiming priority by including it "in the first sentence(s) of the specification following the title in a nonprovisional application[.]" 37 C.F.R. § 1.78(h). The 2012 Certificate of Correction expressly called for the changes described therein to be "reproduced on the first page of the Patent[.]" (Def. Ex. 4 at p. 65 of 69). Therefore, it appears that no ADS or Petition was necessary to support Dr. Rajasingham's request for the Certificate of Correction. In any case, it is undisputed that the PTO issued the 2012 Certificate of Correction, which is attached to the '835 Patent and provides notice to the public that the Patent claims priority to 1997. This court concludes that under these circumstances, the 2012 Certificate of Correction was effective.

The next issue in dispute is whether the second Certificate of Correction, which was issued on May 1, 2018, is controlling on the issue of priority, or whether the 2012 Certificate of Correction remains controlling on that matter. Dorel argues that Dr. Rajasingham's later, 2017 filings were deficient because "the supplemental ADSs did not appropriately delete the previous priority claims" or put the PTO on notice that he was eliminating a priority claim. (Def. Mem. at 19). Accordingly, Dorel asserts that "the priority claim to the 1997 '626 Application still exists" as a matter of law. (Def. Reply Mem. at 16). Cozy, on the other hand, argues that

under the regulations, the most recent ADS will govern when there are inconsistencies between the ADS and other documents.  (Pl. Opp. Mem. at 20).  Because "[t]he second Certificate of Correction and ADS replaced the *exact same section* of the ['835] Patent as the first Certificate[,]" Cozy reasons that "[t]he last ADS and Certificate of Correction are controlling and the priority date of the '835 Patent is November 8, 1999."  (Id.).  This court finds that the applicable regulations warrant a judgment in Dorel's favor.

As discussed previously, an ADS providing corrected or updated information "must identify the information that is being changed, with underlining for insertions, and strike-through or brackets for text removed[.]"  37 C.F.R. § 1.76(c)(2).  Here, it is undisputed that in his 2017 ADS accompanying the Petition for Delayed Benefit Claims, Dr. Rajasingham did not reference the 2012 Certificate of Correction or its contents and did not identify any text, with strike-throughs or brackets, that he was seeking to remove from the '835 Patent.  (See Pl. Ex. D at COZY_0000001154-59).  Nor did he alert the PTO, in his Request for Certificate of Correction or in his Petition, that he was seeking to replace the changes that had been made by the 2012 Certificate of Correction.  (See id. at COZY_0000001153, COZY_0000001163-64).  Accordingly, Dr. Rajasingham's effort to remove his claim of priority to 1997 and replace it with a claim of priority to 1999 was ineffective.

Cozy's reliance on the rules regarding inconsistencies does not support a different conclusion.  Where inconsistencies exist between an ADS and other documents, "[t]he most recent [ADS] will govern with respect to ... domestic benefit (§ 1.78) claims[.]"  37 C.F.R. § 1.76(d)(1)(i).  However, by his ADS accompanying his 2017 Petition, Dr. Rajasingham sought to insert underlined language without removing the benefit claims contained in the 2012

Certificate of Correction.  According to Cozy's own expert witness, "[w]hen analyzing the

domestic benefit or foreign priority data, ... the [PTO] only captures priority data from the ADS

and does not give any consideration to the specification or other documents." (Thomas Decl. ¶

32).  In this case, the 2017 ADS failed to notify the PTO that Dr. Rajasingham was not only

seeking to add benefit claims but was also seeking to replace the benefit claims contained in

the 2012 Certificate of Correction.  Therefore, this court concludes that Cozy cannot rely on any

inconsistency between the 2017 ADS and the benefit claims of the 2012 Certificate of

Correction to defeat Dorel's motion for summary disposition with respect to the '835 Patent.

Cozy's reliance on Professor Thomas' testimony to support its claim of priority to 1999 is

also insufficient to support the denial of Dorel's motion.  In his Declaration, Professor Thomas

opines that "the '835 [P]atent has a priority date of November 8, 1999." (Thomas Decl. ¶ 79).

However, in rendering his opinion, Professor Thomas relies entirely on the effectiveness of the

May 1, 2018 Certificate of Correction and assumes that Dr. Rajasingham properly disclaimed

priority to 1997.  (See id. ¶¶ 79-92).  Because this court has found, as a matter of law, that Dr.

Rajasingham did not effectively disclaim priority to 1997, Professor Thomas' opinion on this

matter does not create a genuine of issue of fact with respect to the priority claims of the '835

Patent.

Finally, Cozy notes that during his prosecution of the '416 and '835 Patents, Dr.

Rajasingham repeatedly relied on the advice of PTO examiners regarding the proper filings

necessary to establish and correct the priority dates of the '416 and '835 Patents.  (PF ¶ 43; Pl.

Opp. Mem. at 14).  However, this representation does not excuse his failure to properly amend

the benefit claims set forth in the 2012 Certificate of Correction or, perhaps even more

[53]

importantly, to bring those benefit claims to the PTO's attention when he sought a new

Certificate of Correction in 2017.  Although the specific reference requirement of 35 U.S.C. §

120 may appear to be a technicality, "courts have long-recognized that 'it embodies an

important public policy,' and thus have required strict adherence to its requirements."

Droplets, 887 F.3d at 1316 (quoting Sampson, 463 F.2d at 1045).  Requiring patentees to follow

the procedures for correcting priority claims is consistent with this approach.  In any event,

Cozy has not presented any evidence showing that Dr. Rajasingham's errors were attributable

to the advice of a PTO examiner.  Therefore, his argument is not persuasive and Dorel is

entitled to a judgment in its favor.

## V. CONCLUSION

For all the reasons detailed herein, "Dorel Juvenile Group, Inc.'s Motion for Summary

Determination of Priority Dates for Asserted Patents" (Docket No. 176) is ALLOWED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

[54]