**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| COZY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DOREL JUVENILE GROUP, INC.,<br><br>Defendant. | C.A. No. 21-cv-10134-JGD |

**PLAINTIFF COZY, INC.'S RESPONSE TO DEFENDANT DOREL JUVENILE GROUP, INC.'S MOTION TO BIFURCATE AND HEAR INEQUITABLE CONDUCT CLAIMS FIRST**

# TABLE OF CONTENTS


INTRODUCTION ..........1

LEGAL STANDARD..........2

ARGUMENT..........3

A. Dorel's Motion Tacitly Admits the Relief Sought Would Violate Cozy's Constitutional Right to a Jury. ..........3

1. The Federal Circuit's test in *Shum* counsels against hearing equitable claims first. ..........3

2. *Therasense* changed the standard of materiality and undercuts the cases Dorel relies upon for relief..........4

B. Other Reasons Support the Denial of Dorel's Motion..........6

1. Judicial economy favors trying the merits first because Dorel's counterclaims are broader than Cozy's infringement claims. ..........6

2. Dorel's counterclaims require significantly more discovery than the merits trial. ..........8

3. The potential for resolution of Cozy's infringement claims does not warrant trying Dorel's counterclaims and defenses before the merits..........9

CONCLUSION..........12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*,
55 F. Supp. 3d 221 (D. Mass. 2014) ....................8

*Agfa Corp. v. Creo Products, Inc.*,
451 F.3d 1366 (Fed. Cir. 2006)....................4, 5

*Audio MPEG Inc. v. Dell Inc.*,
254 F. Supp. 3d 798 (E.D. Va. 2017) ....................8

*Beacon Theaters, Inc. v. Westover*,
359 U.S. 500 (1959)....................2, 5

*Cancer Rsch. Tech. Ltd. v. Barr Lab'ys, Inc.*,
625 F.3d 724 (Fed. Cir. 2010)....................7

*Celgene Corp. v. Barr Labs., Inc.*,
2008 WL 2447354 (D.N.J. 2008) ....................3, 10

*Dairy Queen, Inc. v. Wood*,
369 U.S. 469 (1962)....................3

*Ductmate Indus. Inc. v. Famous Dist. Inc.*,
2014 WL 4104810 (W.D. Pa. 2014) ....................10

*Gardco Mfg., Inc. v. Herst Lighting Co.*,
820 F.2d 1209 (Fed. Cir. 1987)....................3, 4, 5, 6

*Henrob Ltd. v. Bollhoff Systemtechnick GmbH & Co.*,
2008 WL 553248 (E.D. Mich. 2008)....................10

*Herman v. William Brooks Shoe Co.*,
1998 WL 832609 (S.D.N.Y. 1998)....................5, 6

*Insight Tech., Inc. v. Surefire, LLC*,
2009 WL 3242556 (D.N.H. 2009)....................10

*MySpace, Inc. v. Graphon Corp.*,
732 F. Supp. 2d 915 (N.D. Cal. 2010) ....................10, 11

*SanDisk Corp. v. STMicroelectronics, Inc.*,
2009 WL 1404689 (N.D. Cal. 2009). ....................10, 11

*SB IP Holdings LLC v. Vivint, Inc.*,
2023 WL 3681685 (E.D. Tex. 2023) .......... 9

*Schering Corp. v. Mylan Pharms. Inc.*,
2010 WL 11474547 (D.N.J. 2010) .......... 10

*Shum v. Intel Corp.*,
499 F.3d 1272 (Fed. Cir. 2007) .......... 2, 3, 4, 5

*Therasense, Inc. v. Becton, Dickinson and Co.*,
649 F. 3d 1276 (Fed. Cir. 2011) .......... 4, 5, 6

*United Servs. Auto. Ass'n v. PNC Bank N.A.*,
2022 WL 19227587 (E.D. Tex. 2022) .......... 9

*WebXchange Inc. v. Dell Inc.*,
2009 WL 5173485 (D. Del. 2009) .......... 10

**Statutes**

FED. R. CIV. P. 42 .......... 2, 3, 8, 9

**Other Authorities**

37 C.F.R. 1.56(b) .......... 5, 6

Plaintiff Cozy, Inc. ("Cozy" or "Plaintiff") hereby opposes Defendant Dorel Juvenile Group, Inc.'s ("Dorel" or "Defendant") Motion to Bifurcate and Hear Inequitable Conduct Claims First (D.I. 400) and its brief in support (D.I. 401) ("Dorel's Br.").

**INTRODUCTION**

The parties agree bifurcation of equitable defenses from legal ones is appropriate. Dorel's requested relief, however—to prioritize an inflammatory and complicated aspect of the case, only then to lay it at this Court's feet—violates Cozy's right to a trial by jury. And it is not the most efficient resolution of the matter.

As this Court knows, this litigation already has a long history on the merits. The parties spent years preparing this case for trial on issues of infringement, invalidity, and damages. Little remains before the jury could hear and decide those claims. Discovery is closed and expert reports remain in progress.

Dorel's inequitable conduct claims, however, are nowhere close to trial-ready. Dorel repeatedly outlined its plan to take extensive discovery of Cozy, including continued forensic examinations of computers; depositions of Dr. Rajasingham, trial counsel, Kirkland & Ellis; and the preparation and service of expert reports relating to its equitable defenses. The boundaries of this discovery will no doubt be hotly contested by the parties, as Cozy disputes that Dorel's equitable defenses and counterclaims have any merit. And the parties still await the outcome of the Federal Circuit on Cozy's petition for writ of mandamus. The scope of additional discovery on equitable issues cannot be known until this ruling occurs.

Even after discovery is complete, motion practice is inevitable, and Dorel's arguments are far from straight-forward. Then the Court must wrestle with these equitable claims and, if the present trial schedule holds, issue detailed written opinions in an impossibly short amount of time.

Cozy also is considering whether to move to appeal the Court's adverse rulings on the merits of invalidity and infringement based upon the Court's (i) summary judgment ruling and (ii) exclusion of Dr. Kent's infringement report. *See* D.I. 360, 402. An appeal by Cozy at this stage on the merits would significantly simplify all remaining issues before this Court. After conferring with Dorel, Cozy would file a separate motion for leave to appeal.

The parties agree the Court should bifurcate the equitable issues into a separate bench trial. The Court should deny Dorel's invitation to hear those claims first to preserve Cozy's Seventh Amendment right to a jury trial.

## LEGAL STANDARD

A district court has broad discretion over trial management, including bifurcation of issues for trial, pursuant to Federal Rule of Civil Procedure 42(b). This discretion is expressly limited, however, by a party's right to a trial by jury. FED. R. CIV. P. 42(b). The Supreme Court explained that "the same court may try both legal and equitable causes in the same action," except where there are factual issues "common" to both. *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 510 (1959). In that scenario, "the legal claims involved in the action *must be determined prior* to any final court determination of [the] equitable claims." *Id.* (emphasis added).

The Federal Circuit more recently set forth a two-part test to resolve the issue of whether to bifurcate and hear equitable claims first. *See Shum v. Intel Corp*., 499 F.3d 1272, 1277 (Fed. Cir. 2007) (district court erred in holding bench trial on inventorship claim and subsequently granting summary judgment in state-law fraud claims that depended on common factual disputes). First, the court must determine whether the movant seeks to bifurcate the case such that resolution of an equitable claim precedes resolution of a legal claim. *Id*. at 1277. If this is the case, then the Court must determine whether the equitable and legal claims share common factual issues. *Id*.; *see*

*also Celgene Corp. v. Barr Labs., Inc.*, 2008 WL 2447354, at *2 (D.N.J. 2008) (analyzing *Shum* and refusing to permit equitable claims to proceed to trial first).

## ARGUMENT

### A. Dorel's Motion Tacitly Admits the Relief Sought Would Violate Cozy's Constitutional Right to a Jury.

Dorel's lengthy motion boils down to a single issue: whether Dorel's bifurcation and reordering of proofs violates Cozy's constitutional right to a trial by jury. On this issue, the parties agree on several key aspects: (1) the Court has discretion to order bifurcation, (2) the purposes of Federal Rule of Civil Procedure 42(b) are served in trying Dorel's equitable claims separate from the merits trial; and (3) post-*Therasense*, there is potential overlap in the issues of determining "but-for" materiality, including Horkey. These agreed facts are sufficient for the Court to order bifurcation but also to deny Dorel's request to try the counterclaims before issues on the merits.

While Dorel refers to this "overlap" of factual issues between the equitable and legal claims as a "minor complication" (Dorel's Br. at 15), the Supreme Court treats this right to trial by jury as a "constitutional imperative." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212-13 (Fed. Cir. 1987). Any exception permitting a court to hear equitable claims first must be "'narrowly limited and must, wherever possible, to be exercised to preserve jury trial.'" *Id*. (quoting *Beacon Theaters*, 359 U.S. at 510); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 479 (1962) (holding that when legal claims involve factual issues that are "common with those upon which [a party's] claim to equitable relief is based, the legal claims involved in the action must be determined prior to any final court determination of [the] equitable claims").

1. <u>The Federal Circuit's test in *Shum* counsels against hearing equitable claims first.</u>

The two-part test set forth in *Shum* prohibits Dorel's requested relief. First, it is undisputed that Dorel's counterclaims are equitable in nature. Dorel's own motion describes them in the

"Background of Equitable Claims." Dorel's Br. at 1-2. These include inequitable conduct, unclean hands, and prosecution laches. *Id.* at 1-4. Cozy's claims, however, are legal claims of patent infringement; in response, Dorel asserted legal defenses of non-infringement and invalidity. Accordingly, the only possible dispute lies in whether there is any factual overlap between the equitable and legal claims.

Second, Dorel itself admitted an "overlap" between Cozy's merits case and determining whether Horkey is "but for" material to the claims and whether Dr. Rajasingham intentionally deceived the PTO by failing to provide it during discovery. Dorel's Br. at 14. Cozy agrees. Dorel's Counterclaim IV is squarely focused on alleged inequitable conduct for withholding Horkey. These allegations are directly relevant to Dorel's counterclaims and defenses relating to the '835 and '416 patents. For example, Dorel alleges Horkey invalidates the '835 patent. *See, e.g.*, D.I. 370 at ¶ 136 ("Accordingly, the Horkey Patent establishes either alone or in combination with other patents or printed publications, a prima facie case of unpatentability of at least claim 1 of the '835 Asserted Patent."). As another example, the parties' evidence in support of the remaining infringement claims and defenses, and the jury's evaluation and verdict thereof, may be relevant to Dorel's allegations regarding Cozy's litigation conduct. *See, e.g.*, D.I. 370 (Counterclaim V). While the Court is privy to the evidence during the merits trial, but the jury is not present during a bench trial, any overlap in the merits and counterclaims favors trying the merits case first.

2. <u>*Therasense* changed the standard of materiality and undercuts the cases Dorel relies upon for relief.</u>

The cases Dorel cites to in arguing that the merits and counterclaims lack commonality and overlap were decided before *Therasense*. *See* Dorel's Br. at 7 (citing cases before 2011). To be sure, the Federal Circuit itself expressly distinguished *Gardco* and *Agfa* to preserve the right to trial by jury for the appellant in that case. *Shum*, 499 F.3d at 1279. In particular, the Federal Circuit

noted that the *Gardco* court "'explicitly refused to make any findings relating to the patentability of the claimed invention, in view of the prior art or otherwise, and made no finding on infringement.'" *Id.* (quoting *Gardco*, 820 F.2d at 1213). Here, in sharp contrast, the Court will have to determine whether Horkey was "but-for" material in deciding inequitable conduct—the exact same fact a jury would decide to resolve Dorel's invalidity defense based on Horkey.

And *Shum* distinguished *Agfa* because, "while inequitable conduct and validity questions "overlap in the consideration of some aspects of the same relevant evidence, they do not involve a common issue" as in *Beacon Theaters*. *Shum*, 499 F.3d at 1279 (quoting *Agfa Corp. v. Creo Products, Inc.*, 451 F.3d 1366, 1372 (Fed. Cir. 2006)). This distinction dissolved after *Therasense*, however, as the Federal Circuit expressly changed the standard of materiality to a "but-for" standard, instead of the standard set forth in Rule 56 (37 C.F.R. 1.56(b)) that was expressly relied upon in *Agfa*. *Compare Agfa*, 451 F.3d at 1372-73 *with Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F. 3d 1276, 1294 (Fed. Cir. 2011) ("This Court does not adopt the definition of materiality in PTO Rule 56."). Dorel recognized this distinction in its brief. Dorel Br. at 14. As such, a jury's determination of whether Horkey invalidates the '835 is, in fact, the same factual question the Court must answer in determining if Horkey was "but-for" material for purposes of inequitable conduct. Dorel cites no decision post-*Therasense* that supports its request.

At least one other district court (albeit pre-*Therasense*) agreed that invalidity and inequitable conduct theories could violate a party's right to trial by jury if the equitable claims proceeded first. *See Herman v. William Brooks Shoe Co.*, 1998 WL 832609, at *6 (S.D.N.Y. 1998). In assessing materiality of arguments made to the PTO about prior art, "the Court would address the same factual issue the jury is to decide with respect to defendants' invalidity claim," and "a possibility of inconsistent factual findings would exist if the Court were to weigh the inequitable

conduct issues prior to jury trial of the invalidity claim." *Id.* at *4-*5. "Given those possibilities, preservation of plaintiff's Seventh Amendment jury trial right dictates that a jury assess the significance of the 'prior art' addressed by the Amendments before the Court reaches 'step two' [i.e., weighing materiality and intent] of the inequitable conduct analysis. Following the jury trial, the Court would be able to incorporate the jury's findings as to the importance of the Amendments into the Court's weighing of the inequitable conduct claim." *Id.* at *5. The same reasoning applies here.

*Herman* considered but distinguished *Gardco* in its ruling because even if an examiner considered a reference material, it may not have been enough to invalidate the patent. *Id.* In doing so, it previewed the impact of *Therasense's* change from Rule 56 to "but for" materiality. *Id.* (quoting *Gardco*, 820 F.2d at 1214). Under *Therasense*, this is now the law.

* * * * *

Recognizing the constitutional problem with trying equitable claims first, Dorel suggests "such concerns can easily be addressed." Dorel Br. at 14. But Dorel proposes no solutions; none exist. The only constitutionally accepted outcome is for this Court to deny Dorel's motion, permit Cozy to try the merits case first to the jury, followed by a bench trial on equitable issues.

**B. Other Reasons Support the Denial of Dorel's Motion.**

1. <u>Judicial economy favors trying the merits first because Dorel's counterclaims are broader than Cozy's infringement claims.</u>

Dorel argues that trying five counterclaims of inequitable conduct, a counterclaim and defense of unclean hands, and a defense of prosecution laches across four patents is somehow more economical than an infringement trial on two patents. Dorel offers no rationale for why the bench trial on its claims—which raise three disparate legal bases and at least four disparate fact scenarios—would be more efficient than the merits trial. For example, Dorel does not estimate the

number of days it would need for a bench trial on these seven claims and defenses or show it would need fewer than needed for the merits trial.

Nor does Dorel explain why it is more efficient to hear two counterclaims (Count II and Count III) and one defense (Prosecution Laches) that only relate to the ’298 and ’739 patents, which the Court’s summary judgment order effectively invalidated (D.I. 360) and would not be addressed at the merits trial. For example, while Dorel’s Answer seems to allege that prosecution laches could apply to the Certificate of Correction filed after the issuance of the ’835 and ’416 patents, there is no basis for such an application. *See Cancer Rsch. Tech. Ltd. v. Barr Lab’ys, Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010) (explaining doctrine of prosecution latches “may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution” that constitutes an egregious misuse of patent system) (emphasis added). Dorel appears to recognize this, raising only the alleged delay in prosecuting the ’298 and ’739 patents in alleging Dorel’s prosecution laches defense is likely to succeed. *See* Dorel’s Br. at 12.

Dorel also ignores that at least Counts II, III, and IV—which allege a failure to disclose three different prior art systems or references—each has a separate factual basis to determine the elements of withholding, materiality, and intent to deceive. *See* D.I. 370 (Counterclaim Count II alleging failure to disclose the July 2009 Patent Application, Dorel’s Air Protect® technology, and Dorel’s patents covering its Air Protect® technology when prosecuting the ’298 and ’739 patents), (Counterclaim Count III alleging failure to disclose DE ’588 in prosecuting the ’298 and ’739 patents), (Counterclaim Count IV alleging failure to disclose Horkey in prosecuting the ’835 patent).

Cozy’s infringement claims, on the other hand, now only address two of the four patents, and apply to the same small set of representative products. And if Cozy loses the merits trial, *i.e.*,

Dorel does not infringe or the asserted patents are invalid, Dorel's remaining equitable defenses are moot. The complexity of the issues and the potential to eliminate a trial on Dorel's defenses therefore favors addressing the merits trial first.

Avoidance of prejudice also favors trying the merits issues first. *See* FED. R. CIV. P. 42(b). The proposed bifurcation and frontloading Dorel's counterclaims will delay the final determination of the action and force Cozy to present the same evidence in two separate trials, unduly prejudicing Cozy. *See Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*, 55 F. Supp. 3d 221 (D. Mass. 2014) (citing *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 841 (N.D. Ill. 2006)).

The same is not true for Dorel. While Dorel argues it will be prejudice by having to wait until after the merits trial to have its equitable counterclaims decided, at least one court found no prejudice in bifurcating similar counterclaims. *See Audio MPEG Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 808 (E.D. Va. 2017) (no prejudice where alleged harm giving rise to counterclaims happened more than a decade ago).

2. <u>Dorel's counterclaims require significantly more discovery than the merits trial.</u>

Dorel requests additional fact and expert discovery, not only from Cozy but also from third parties, allegedly relevant to its counterclaims. For example, Dorel seeks continued forensic examinations of computers and additional depositions of Dr. Rajasingham related to discovery and any documents produced from those examinations. Dorel also has an outstanding subpoena to Cozy's former counsel, Travis Brown, which appears to only relate to its inequitable conduct claims. *See* Aug. 23, 2023 Hr'g Tr. at 9:24-11:2. Dorel also noted it plans to notice depositions and potential document discovery from current trial counsel and Kirkland & Ellis "for the purpose of obtaining communications that would be prosecution-related communications," which only relate to Dorel's equitable defenses. *Id.*

Dorel also intends to serve an additional expert report "related to the inequitable conduct claim[s]." *Id.* at 10:13-15. Thus, before discovery of Dorel's counterclaims and defenses is complete, the parties must slog through burdensome, intrusive, and hotly contested discovery (and as the Court astutely observed, motions to quash and other motions practice), only to present highly complicated arguments of patent prosecution among file histories this Court noted as unwieldy. Then the Court must wrestle with these claims and issue orders on the five counterclaims and two defenses before the trial on the merits. This is not conducive to "expedition and economy." *See* FED. R. CIV. P. 42(b).

On the other hand, fact discovery on the merits has been closed for nearly a year and expert reports are substantially complete.

3. <u>The potential for resolution of Cozy's infringement claims does not warrant trying Dorel's counterclaims and defenses before the merits.</u>

Dorel's economy argument presumes that it will prove—by clear and convincing evidence—that the '835 and '416 patents are unenforceable, thereby rendering an infringement trial unnecessary. But courts routinely try infringement issues before inequitable conduct claims, even where the inequitable conduct claims can render all asserted patents unenforceable. *See, e.g.*, *SB IP Holdings LLC v. Vivint, Inc.*, 2023 WL 3681685, at *1 (E.D. Tex. 2023) (declining to hold one day hearing on inequitable conduct prior to jury trial where defendant argued all seven patents were unenforceable due to inequitable conduct, noting courts usually "conduct bench trials on inequitable conduct during jury deliberations or after the verdict has been received").[1]

[1] *See also, e.g.*, *United Servs. Auto. Ass'n v. PNC Bank N.A.*, 2022 WL 19227587, at *4 (E.D. Tex. 2022) (holding that bench trial on inequitable conduct would take place after jury trial on the mertis); *Ductmate Indus. Inc. v. Famous Dist. Inc.*, 2014 WL 4104810, at *7-*8 (W.D. Pa. 2014) (bifurcating inequitable conduct and hearing infringement trial first to preserve right to jury trial); *Schering Corp. v. Mylan Pharms. Inc.*, 2010 WL 11474547, at *1 (D.N.J. 2010) (refusing to permit inequitable conduct counterclaims to proceed to a bench trial before legal counterclaims of *Walker*

The two cases Dorel relies upon to argue otherwise are inapposite. In *MySpace.*, the patent challenger requested an early hearing on inequitable conduct while the case was "in its infancy"—unlike the case here, where merits fact discovery closed, claim construction is complete, and expert discovery is in progress. *See MySpace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915, 916 (N.D. Cal. 2010). Moreover, because the three inequitable conduct claims in *MySpace* related to the patent applicant's failure to disclose information during prosecution of the patents, the inequitable conduct claims required limited claim construction and discovery—compared to the patent owner's infringement claims—so the court agreed to an *early* hearing, not just before trial, but before extensive discovery occurred. *Id.* at 920-21. Unlike *MySpace*, Dorel's counterclaims require *more* discovery than Cozy's merits claims, so it is not more efficient to frontload Dorel's inequitable conduct claims. *See id.*

*SanDisk Corp. v. STMicroelectronics, Inc.* also had a unique procedural posture. 2009 WL 1404689, at *1 (N.D. Cal. 2009). The case was stayed for nearly three years pending related infringement cases at the ITC. *Id.* When the stay lifted, the plaintiff filed an amended complaint and the defendant answered with counterclaims. *Id.* Within six weeks, the plaintiff moved for summary judgment on the counterclaims. *Id.* Unlike in this case, where merits fact discovery is

*Process* under Seventh Amendment); *Insight Tech., Inc. v. Surefire, LLC*, 2009 WL 3242556, at *1 (D.N.H. 2009) ("Although the bench trial could be held before the jury trial, in this case, the court concludes that it would be more appropriate to wait until after the jury trial to consider SureFire's inequitable conduct defense."); *WebXchange Inc. v. Dell Inc.*, 2009 WL 5173485, at *3 (D. Del. 2009) ("the potential for duplicative evidence regarding the alleged prior art will be presented at an inequitable conduct trial and at subsequent trials on infringement and invalidity weighs against bifurcation"); *Henrob Ltd. v. Bollhoff Systemtechnick GmbH & Co.*, 2008 WL 553248, at *1 (E.D. Mich. 2008) (ordering a jury trial on the merits before holding a bench trial on inequitable conduct); *Celgene Corp.*, 2008 WL 2447354, at *3 (same).

.

complete, the *SanDisk* court stayed merits discovery pending resolution of summary judgment, which it granted in part. *Id.*

The defendant moved to bifurcate and try the two counterclaims that survived summary judgment: (i) *Walker Process* fraud, and (ii) inequitable conduct. *Id.* The court found it could not resolve the *Walker Process* fraud claim for Seventh Amendment concerns but granted bifurcation and early trial of the inequitable conduct claim. *Id.* at *2. It did so, however, not only because a finding of inequitable conduct would resolve the infringement claim, but because a finding of *no* inequitable conduct would resolve the claims of *Walker Process* fraud. *Id.* Because none of the merits issues here would be resolved by finding no inequitable conduct, there is not the same parity for Cozy that the *SanDisk* court found favored resolving the inequitable conduct claim before the merits trial. *See id.*

Much of Dorel's Motion is dedicated to arguing it is likely to succeed on its counterclaims and defenses. This argument should be given little weight in deciding the present motion.

*First*, Dorel cites no case finding likelihood of success on counterclaims warrants trying them first. While courts may consider whether separation will lead to economy in discovery or if a first trial will be dispositive of the case, courts do not prejudge the evidence and weigh which party is most likely to succeed. *See MySpace*, 732 F. Supp. 2d at 917, 921 (specifically noting the court had not reached any decision on the merits of the claims and citing early stage of the case and need for little discovery to decide inequitable conduct issues early). Instead, as noted above, trying counterclaims before the merits is extremely unusual and in similar situations, courts usually try the merits first.[2]

---

[2] *See* note 1, *supra*.

*Second*, Dorel's reliance on this Court's finding on the pleadings that its inequitable conduct claims are *plausible* (and denying a motion to dismiss) is a far cry from establishing Dorel is likely to prove—by clear and convincing evidence—that any patent is unenforceable. Particularly given the amount of discovery ahead on these issues, it is neither possible nor practical to make such a determination on this limited record.

## CONCLUSION

Dorel's motion to bifurcate and hear first the equitable defenses violates Cozy's constitutional right to a jury. It further wastes the resources of the parties and this Court, and results in repeat trials and appeals. The Court should bifurcate the equitable issues but conduct the merits trial first to preserve Cozy's right to trial by jury.

Dated: November 27, 2023

Respectfully Submitted:

*/s/ Brent P. Ray*

Brent P. Ray (*pro hac vice*)
KING & SPALDING LLP
110 N Wacker Dr., Suite 3800
Chicago, IL 60606
(312) 764-6925
bray@kslaw.com

Dara M. Kurlancheek (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave, NW, Suite 200
Washington, D.C. 20006-4707
(202) 626-5590
dkurlancheek@kslaw.com

Angela Tarasi (*pro hac vice*)
Brynna Wasserman (*pro hac vice*)
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
(720) 626-2300
atarasi@kslaw.com
bwasserman@kslaw.com

Abby Parsons (*pro hac vice*)
KING & SPALDING LLP
1100 Louisiana St., Suite 4100
Houston, TX 77002
(713) 751-3200
aparsons@kslaw.com

Noah Stid (*pro hac vice*)
KING & SPALDING LLP
601 South California Ave., Ste. 100
Palo Alto, CA 94304
(650) 422-6702
nstid@kslaw.com

Sharona Sternberg (BBO #682384)
Kevin R. Mosier (BBO #703739)
SUNSTEIN LLP
100 High Street
Boston, MA 02110
(617) 443-9292
ssternberg@sunsteinlaw.com
kmosier@sunsteinlaw.com

Kenneth R. Adamo (*pro hac vice*)
LAW OFFICES OF KENNETH R. ADAMO
360 W. Illinois
Chicago, IL 60654
(312) 527-0620
kradamo23@gmail.com

*Attorneys for Plaintiff, Cozy, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2023, a true and correct copy of the foregoing was served upon all counsel of record via the Court's CM/ECF system.

*/s/ Brent P. Ray*
Counsel for Plaintiff