UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COZY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 21-10134-JGD |
| DOREL JUVENILE GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OF DECISION AND ORDER ON PENDING MOTIONS TO WITHDRAW

January 11, 2024

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on three "Motion[s] to Withdraw as Counsel for Plaintiff Cozy, Inc." (Docket Nos. 412, 413, 416). Through these motions, King & Spalding LLP ("K&S"), Sunstein LLP ("Sunstein"), and Kenneth R. Adamo ("Adamo"), as counsel for Cozy, Inc. ("Cozy"), seek to withdraw from this matter, citing multiple grounds in support of their withdrawal including, but not limited to, breakdown of the attorney-client relationship and Cozy's failure to meet its financial obligations to counsel. Dorel Juvenile Group, Inc. ("Dorel") has since filed an opposition to these motions, as has plaintiff Cozy, Inc., and Cozy's counsel has responded. This court spares the reader from any further recital of the procedural history, or this case's background.[1] After careful consideration of the parties' written submissions, and taking into

---

[1] Many of these details can be found in the court's rulings on Cozy's Motion to Dismiss the inequitable conduct counterclaims (Docket No. 130); Dorel's Motion for Summary Determination of priority dates

consideration this litigation's lengthy, tortured history and its recent developments, for the reasons described below, the motions to withdraw filed by counsel for Cozy, Inc. (Docket Nos. 412, 413, 416) are ALLOWED.

## II. DISCUSSION

### A. Legal Standard

Rule 83.5.2(c) of this District's Local Rules allows an attorney, in those instances where: "(A) any motion is pending in the case; (B) a trial date has been set; (C) an evidentiary hearing has been set; or (D) any reports, written or oral, are due[,]" to "seek leave of court to withdraw his or her appearance for good cause shown." L.R. 83.5.2(c)(1) and (2). Courts construe "good cause" by looking to Rule 1.16(b) of the Massachusetts Rules of Professional Conduct, the rules which govern the conduct of those attorneys practicing and appearing before this court. See L.R. 83.6.1. Courts may also balance certain factors such as: "(1) the amount of work performed and paid for in comparison with the work remaining, (2) fees paid to date, and (3) the likely effect on the client." Phantom Ventures LLC v. DePriest, No. 15-cv-13865-IT, 2017 WL 1147448, at *1 (D. Mass. Mar. 27, 2017) (quoting Hammond v. T.J. Litle & Co., Inc., 809 F. Supp. 156, 161 (D. Mass. 1992)).

Deciding "'an attorney's motion to withdraw in a civil case is a matter addressed to the discretion of the trial court[.]'" Lieberman v. Polytop Corp., 2 F. App'x 37, 39 (1st Cir. 2001) (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 135 (1st Cir. 1985)). Applying these principles and exercising such discretion, courts have permitted withdrawal where, as

---

(Docket No. 360); and on Dorel's Motion to Compel the disclosure of documents pursuant to the crime-fraud exception (Docket No. 365).

here, there has been a clear breakdown of the attorney-client relationship and/or a party has failed to fulfill its financial obligations to its counsel.

B. **Analysis**

The arguments made within each motion to withdraw are virtually identical. The court considers them in the order in which they have been presented and adds in additional detail and clarification where appropriate.

**Breakdown of the Attorney-Client Relationship**

In their motions to withdraw, K&S, Sunstein, and Attorney Adamo each make the argument that there has been a breakdown of their attorney-client relationship with Cozy but suggest that the specific reasons for the breakdown remain shielded by their confidentiality obligations.[2] Nevertheless, they reference the matters brought to the court's attention at the October 13, 2023 hearing "and in subsequent filings." (See Docket No. 412 at 2-3; Docket No. 413 at 3; Docket No. 416 at 2-3).[3] The court is aware of those concerns reported by counsel at the hearing, and it recognizes that these concerns have resulted in the deterioration of the relationship between the parties and accelerated its breakdown. This court separately has its own concerns, and it acknowledges that certain conduct alleged by the parties during discovery has raised serious ethical questions including, but not limited to, the potential spoliation of

---

[2] In addition to claiming a breakdown of the attorney-client relationship, Attorney Adamo states that, as a "solo practitioner," he is unable to "shoulder the financial burden of representing Cozy alone," in the event K&S and Sunstein are permitted to withdraw. (See Docket No. 416 at 3). Because the existence of a breakdown of the attorney-client relationship in this case constitutes good cause under L.R. 83.5.2(c) and thus an independent basis to grant Attorney Adamo's Motion to Withdraw, this court does not address this separate argument.

[3] Citations to page numbers refer to the court's CM/ECF page numbering system located at the top right of each page of the document.

[3]

evidence and fraud. (See Docket Nos. 398, 430, 449, and others). At this juncture, the court is not prepared to allocate blame as between Cozy and its counsel, though this court has concerns about numerous representations made to the court by both in the course of discovery. For present purposes it is sufficient that "[t]he trust necessary to the attorney-client relationship evidently no longer exists here." See Emerson v. Mass. Port. Auth., 138 F. Supp. 3d 73, 76 (D. Mass. 2015); see also STAG Williamsport, LLC v. BHN Assocs., LLC, Civil Action No. 21-11958-NMG, 2023 WL 4995327, at *1-2 (D. Mass. July 11, 2023), report and recommendation adopted, Civil Action No. 21-11958-NMG (D. Mass. Aug. 1, 2023) (finding the existence of an "irretrievable breakdown" and recommending withdrawal be granted where counsel experienced communication issues related to "discovery and legal strategy").

### Cozy's Failure to Meet its Obligations to Counsel

In addition, K&S and Sunstein each contend that withdrawal is permitted for the independent reason that Cozy has failed to meet its obligations to them through its nonpayment of attorney's fees and expenses. While not necessarily appropriate in every circumstance, "[a] client's failure to pay attorney's fees may support the withdrawal of counsel[.]" Phantom Ventures LLC, 2017 WL 1147448, at *1 (quoting Hammond, 809 F. Supp. at 161).[4] Specifically, K&S and Sunstein imply that Cozy, having "lost access to the funding source" it had used to pay attorney's fees and expenses, is unable to pay future fees, and they separately contend that Cozy owes "a significant amount for services previously rendered."

---

[4] But see Hasbro, Inc. v. Serafino, 966 F. Supp. 108, 109 (D. Mass. 1997) (permissive withdrawal denied where fees were unpaid but the attorney-client relationship had been "complicated by several factors" which made withdrawal inappropriate).

[4]

(See Docket No. 412 at 3; Docket No. 413 at 2). Counsel has since provided additional detail, *in camera*, with respect to these outstanding fees and expenses under their engagement agreement with Cozy, Inc.[5]

The circumstances in this case support withdrawal on such grounds, particularly where ordering counsel to continue in their representation in this complex patent litigation—which draws on sophisticated expert testimony and reports—would constitute an "unreasonable" and "undue financial burden" and would only drive the fees owed in this case even higher. Metro. Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc., Civil Action No. 15-12939-LTS, 2018 WL 4870903, at *2 (D. Mass. Aug. 17, 2018), report and recommendation adopted, Civil Action No. 15-12939-LTS (D. Mass. Sept. 4, 2018); see Hammond, 809 F. Supp. at 163 (allowing withdrawal where client failed to act in accordance with its "obligation of good faith" or "with due regard for an attorney's right to be compensated" when that client acted "in a way that create[d] extra work, for which the client [knew] there [was] a substantial risk the attorney [would] never be compensated.").

In reaching this determination, the court is cognizant of the fact that counsel was apparently advising Cozy before litigation was even brought, and, therefore, could have been expected to estimate the need for a substantial litigation budget. Moreover, a great deal of the expenses incurred in this litigation arose from the need for extensive discovery due to the haphazard production of materials initially, as well as a lack of control that allowed for the destruction of materials. Similarly, substantial legal fees were incurred in connection with the

---

[5] As detailed in these submissions, counsel, indeed, are owed a significant amount in fees for their services.

issues related to the application of the crime-fraud exception to the attorney-client privilege, an issue in which counsel was involved. Nothing, herein, should be deemed to approve of the hands-off approach to discovery taken by Cozy's counsel, or to suggest that all amounts charged were appropriate.[6] Nevertheless, a great deal remains to be done.

### Dorel's Opposition and Cozy's Response

In its Opposition (Docket No. 423), Dorel argues that Cozy's counsel seek withdrawal due to Cozy's "recent losing streak" and further casts counsel as complicit in the ethical violations that have been alleged in this case. (See Docket No. 423 at 6, 11). This court takes no position on these allegations. Nevertheless, the court finds that Cozy's counsel has sustained their burden of proving the irretrievable breakdown of the attorney-client relationship and the non-payment of substantial bills.

The court acknowledges Dorel's frustration in connection with incurring substantial fees in litigation that was mired in discovery problems and which, in Dorel's view, lacked merit. However, continuing to require that additional fees be incurred does not seem to the court to be in anyone's best interest.

In a response filed as an attachment to Docket No. 444, which this court has since sealed, Cozy, Inc., through its Chief Executive Arjuna I. Rajasingham, denies any breakdown of the attorney-client relationship. However, as discussed supra, the evidence presented to this court suggests otherwise. With respect to its failure to fulfill its obligations to counsel, Cozy's

---

[6] Up until now, it has not been the appropriate time for the court to further explore the role of counsel vs. client in connection with the discovery morass in this case, especially since the issues raised by Dorel's counterclaims of inequitable conduct are to be decided jury-waived. This remains true today, and the court declines all parties' offers to provide additional information to the court relating to ethical concerns ex parte.

arguments in response are equally unpersuasive.  Tellingly, Cozy acknowledges that it lacks the present ability to fund the litigation.  Courts facing similar circumstances, as well as the client's failure to pay past attorney's fees, have allowed counsel to withdraw.  See Phantom, 2017 WL 1147448, at *1 (allowing withdrawal where, among other reasons, there was no dispute that past attorney's fees had gone unpaid and counsel had asserted, "without opposition," that the client lacked "'any commitment to pay future legal bills'"); see also Metro. Prop. & Cas. Ins. Co., 2018 WL 4870903, at *2 (recommending withdrawal where parties had "substantially failed to fulfill their obligations to pay" counsel and did not appear to "be able to secure the resources necessary" to continue paying for representation).

     Here, Cozy has similarly failed to meet its obligations to pay attorney's fees, and as it admits, is without the sort of supplemental funding necessary to continue the litigation.  Requiring Cozy's counsel to continue under these circumstances "simply expects too much of [them]."  Lieberman, 2 F. App'x at 39-40 (reversing denial of motion to withdraw where denying withdrawal could leave counsel without assurances of payment, and at the same time recognizing counsel's exposure "to civil liability" if he did not "front the necessary expenses" to continue representation; the court "refus[ed] to place counsel in such a position").

     This court is cognizant of the fact that Cozy will be unable to continue in this litigation without counsel, and the decision to allow counsel to withdraw is not made lightly.  Local Rule 83.5.5(c) requires corporations such as Cozy, Inc. to be represented by counsel in order to proceed in any litigation.  See Rowland v. Cal. Men's Colony, 506 U.S. 194, 201-02, 113 S. Ct. 716, 721, 121 L. Ed. 2d 656 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel.") (and cases

cited). Nevertheless, expert and fact discovery are still outstanding and the potential trial dates set in this matter are still several months away. Simply put, the court is unpersuaded by the arguments advanced by Dorel and Cozy to the effect that counsel should be obligated to see this litigation through to the end.[7]

### III. ORDER

For all the reasons detailed above, the "Motion[s] to Withdraw as Counsel for Plaintiff Cozy, Inc." (Docket Nos. 412, 413, 416) are ALLOWED.

SO ORDERED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[7] Despite the differences of opinion that exist between the parties, given the extensive briefing on this issue, the court finds any hearing or oral argument unnecessary. See Emerson, 138 F. Supp. at 75 ("The court is not required to provide a hearing on an attorney's motion to withdraw.").

[8]